NO. 07-01-0395-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

MAY 20, 2002

_____

JOE DEAN TROSTLE, APPELLANT

V.

INEZ TROSTLE, INDIVIDUALLY AND AS INDEPENDENT
EXECUTRIX OF THE ESTATE OF WINSTON E. TROSTLE,
SR., DECEASED, AND AS TRUSTEE OF THE WINSTON C.
TROSTLE, SR. ESTATE TRUST AND WINSTON E. TROSTLE,
SR. SEPARATE PROPERTY TRUST, APPELLEE

_____

FROM THE 47TH DISTRICT COURT OF RANDALL COUNTY;

NO. 50,139-A; HONORABLE DAVID L. GLEASON, JUDGE

_____

Before BOYD, C.J., and REAVIS and JOHNSON, JJ.

Appellant Joe Dean Trostle appeals from a take-nothing summary judgment entered

in favor of Inez Trostle (Inez), individually and as independent executrix of the estate of

Winston E. Trostle, Sr., deceased, and as trustee of the Winston E. Trostle, Sr. Estate

Trust and the Winston E. Trostle, Sr. Separate Property Trust in his lawsuit seeking recovery for an alleged breach of fiduciary duty and fraud. Appellant also sued Winston Earl Trostle, Jr. (Earl), but summary judgment was sought and awarded in favor of Inez only and that cause of action was severed, which resulted in this appeal. In one issue, appellant asserts error on the part of the trial court in granting summary judgment. We affirm the judgment of the trial court.

Winston Earl Trostle, Sr. was the father of appellant and Earl and the husband of Inez, who was appellant's stepmother. He died on July 7, 1994, from a lethal injection of insulin while he was a resident of Olsen Manor Nursing Home. Earl and Inez filed a wrongful death lawsuit based on the circumstances surrounding his death and were ultimately awarded approximately $13,000,000 in actual and punitive damages by a jury. Thereafter, the parties entered into a settlement agreement in which Earl and Inez received $6,500,000. Appellant claimed that Inez and Earl misrepresented to him that he was included in the lawsuit and disbursed all of the settlement funds, from which he received nothing. He filed suit based on claims of fraud, breach of fiduciary duty, civil conspiracy, and unjust enrichment and sought the imposition of a constructive trust, a temporary injunction, an accounting, and an award of actual and punitive damages.

Inez filed both a traditional motion for summary judgment and a no-evidence motion for summary judgment. The standards applicable to the review of each type of summary judgment are so well established as to make their reiteration unnecessary. *See Nixon v.*

2

*Mr. Property Management Co., Inc.,* 690 S.W.2d 546, 548-49 (Tex. 1985); *Kimber v. Sideris*, 8 S.W.3d 672, 675-76 (Tex.App.--Amarillo 1999, no pet.). A no-evidence summary judgment motion is properly granted if the respondent fails to present more than a scintilla of probative evidence to raise a genuine issue of material fact as to an essential element of respondent's case. *Id.* at 676. More than a scintilla of evidence exists when reasonable and fair-minded people may differ in their conclusions. *Burroughs Wellcome Co. v. Crye*, 907 S.W.2d 497, 499 (Tex. 1995). In the order granting summary judgment, the trial court did not specify the particular grounds upon which it relied, although at the hearing on the motion, the trial court stated that it was granted on all grounds. In this state of the record, we must affirm it if any of the grounds stated in the motion are meritorious. *Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex. 1989).

Inez asserted that she was entitled to summary judgment because appellant did not suffer any damages with respect to his claims as a beneficiary of the estate. Appellant argues that, because the estate was a party to the wrongful death lawsuit and the settlement agreement also included the estate, he was entitled to a portion of the settlement funds, which he did not receive. The wrongful death lawsuit was filed on May 19, 1995, on behalf of Inez and Earl in their individual capacities. On June 16, 1996, the will of Winston Trostle, Sr. was admitted to probate, and Inez was appointed independent executrix. The petition was then amended to include Inez in her capacity as independent executrix and as trustee of the two testamentary trusts. The original lawsuit went to trial on November 30, 1998, but no issue was submitted to the jury as to the survival claim of

3

the estate. The trial attorney, John Smithee, averred that the evidence showed that Winston Trostle, Sr. became unconscious shortly after the insulin injection, and thus, there was no evidence to support a finding of pain and suffering prior to death.

The jury verdict awarded $1,500,000 to Inez and $1,000,000 to Earl in actual damages and awarded $10,000,000 in punitive damages. Judgment was entered only in favor of Inez and Earl in their individual capacities. No judgment was awarded to the estate or the trusts. Nevertheless, when a settlement agreement was reached, the estate and the trusts were named parties to the settlement agreement, and it provided they released any claims they had against the defendants and their insurance company. It is undisputed that Inez did not distribute any of the settlement funds she received to the estate or the trusts.

Appellant asserts that Inez should have submitted questions to the jury concerning whether, and to what extent, Winston Trostle, Sr. suffered prior to his death, and she should not have settled the claims of the estate and trusts while at the same time "directing the settling insurance companies to omit the estate and trusts from the settlement proceeds . . . ." He has cited no legal authority in support of that proposition. Smithee testified that the estate and trusts were added to the wrongful death lawsuits only to preserve whatever survival action might exist, but there was no evidence at trial to support that action. Appellant has offered nothing to show such evidence did exist or that any error occurred by the omission of such an issue to the jury.

4

Attorney Robert Templeton, who represented Inez and Earl during the settlement of the lawsuit, testified that the "driving force behind the settlement agreement and the settlement amount was the judgment awarding over $13,000,000 dollars to Inez Trostle and Earl Trostle individually for actual and punitive damages based on their wrongful death claims, as well as prejudgment interest." He further averred that "[b]ecause the judgment did not award any survival damages on behalf of the Estate or the Estate Trusts, there were no survival damages allocated to the settlement amount." Additionally, he stated that the defendants and insurance company acted in conformance with the ordinary and customary practice in requiring as a condition of settlement that the estate and the trusts be made parties and release their claims for the purpose of limiting the exposure of the defendants and their insurance company to future litigation in connection with the death of Winston Trostle, Sr.

The summary judgment evidence was sufficient to show the trusts and estate were not entitled to any damages either by the verdict or the judgment, and no such damages could have formed any basis for the money paid by virtue of the settlement agreement. Therefore, appellant, as a beneficiary of the estate, could not have suffered any damages as a matter of law with respect to the survival action.

However, appellant also contends that Inez had a duty to include him in the wrongful death lawsuit and he suffered damages as a result of her failure to do so. He argues that section 71.004 of the Civil Practice and Remedies Code imposed a duty on her

to make all wrongful death beneficiaries parties to the lawsuit, and when the record does not show that all beneficiaries have been made parties, the judgment cannot stand. Section 71.004 provides:

> (a) An action to recover damages as provided by this subchapter is for the exclusive benefit of the surviving spouse, children, and parents of the deceased.
>
> (b) The surviving spouse, children, and parents of the deceased may bring the action or one or more of those individuals may bring the action for the benefit of all.
>
> (c) If none of the individuals entitled to bring an action have begun the action within three calendar months after the death of the injured individual, his executor or administrator shall bring and prosecute the action unless requested not to by all those individuals.

Tex. Civ. Prac. & Rem. Code Ann. § 71.004 (Vernon 1997).

Winston Trostle, Sr. died on July 7, 1994, and the lawsuit was not filed until May 19, 1995. Therefore, appellant argues, Inez was required to prosecute the action on behalf of all the beneficiaries. However, we note that the suit was filed by Inez and Earl prior to the time Inez was appointed as executrix of the estate. Even though the filing of the lawsuit did not take place within three months following the death of Winston Trostle, Sr., no executrix had been appointed prior to the time the lawsuit was filed by two of the beneficiaries.[1] Indeed, the will was not admitted to probate until June 19, 1996, well over a year after the lawsuit was filed.

---

[1]The summary judgment evidence indicates that originally, the will was filed as a muniment of title only.

Furthermore, although the statute appears to contemplate a single lawsuit, the provisions of the act requiring all beneficiaries to be parties is primarily for the benefit of the defendant to protect it from several lawsuits arising out of the same incident. *Avila v. St. Luke's Lutheran Hosp.,* 948 S.W.2d 841, 850 (Tex.App.--San Antonio 1997, writ denied); *Schwing v. Bluebonnet Exp., Inc.,* 470 S.W.2d 133, 137-38 (Tex.Civ.App.--Houston [14th Dist.] 1971), *rev'd in part on other grounds,* 489 S.W.2d 279 (Tex. 1973). The defendant's failure to raise the issue may result in its waiver. *Avila,* 948 S.W.2d at 850*; see also Schafer v. Stevens*, 352 S.W.2d 471, 474 (Tex.Civ.App.--Dallas 1961, writ dism'd). Moreover, each beneficiary can only recover the damages he has individually sustained by reason of the death. *Avila,* 948 S.W.2d at 851. Beneficiaries who are not included in the lawsuit have been found entitled to bring their own lawsuit to recover the damages to which they individually may be entitled. *Id.* Thus, appellant had the right to bring his own lawsuit if he had chosen to do so.

Moreover, appellant produced no evidence in the record to show that he would have recovered damages because of the wrongful death of his father. He also fails to indicate the amount of any pecuniary loss or the extent of mental anguish for which he might have been entitled to recover. Thus, the actions or inactions of Inez in failing to include appellant in the lawsuit were not the proximate cause of any determinable loss to him.

Appellant further complains that, as executrix and as his stepmother, Inez owed him a fiduciary duty to inform him that he was not included in the wrongful death lawsuit

7

because she had a duty to apprize him of facts that might affect his rights. Although appellant contends that Earl made affirmative representations to him that his rights were being protected, it is not disputed that Inez made no such representations to appellant. In fact, the evidence shows that Inez and appellant had not communicated since prior to the death of appellant's father. Therefore, Inez's liability in this regard, if any, can only be predicated upon some duty on her part to provide appellant with information. Generally, there is only a duty to speak when the parties have a confidential or fiduciary relationship with one another. *Insurance Co. of North America v. Morris,* 981 S.W.2d 667, 674 (Tex. 1998).

The duty of an executor and trustee is to administer the estate or trust for the benefit of the beneficiaries. *Huie v. DeShazo,* 922 S.W.2d 920, 924 (Tex. 1996). Executors and trustees owe beneficiaries a duty of full disclosure of all material facts known to them that might affect the rights of the beneficiaries. *Id.* at 923. When the estate was joined as a party to the wrongful death lawsuit, it was for the purpose of asserting any survivor claim that might be proven to exist. As we have already discussed, appellant suffered no damages as a result of not being informed of the survivor action.

We must, therefore, determine whether Inez, as a result of some confidential relationship, owed an independent duty to appellant to inform him of his exclusion as a party to the wrongful death lawsuit or that she had not sued on behalf of all statutory parties. Appellant insists that the "familial, formal and informal relationships existing

8

between Joe Trostle and Inez Trostle gave rise to a fiduciary duty." Where one person is accustomed to being guided by the judgment or advice of another or is justified in believing one will act in the best interest of another because of a family relationship, a confidential relationship may arise. *Thigpen v. Locke,* 363 S.W.2d 247, 253 (Tex. 1962). Thus, an informal relationship may give rise to a fiduciary duty in situations in which one person trusts and relies on another whether the relationship is moral, social, domestic or personal. *Schlumberger Technology Corp. v. Swanson,* 959 S.W.2d 171, 176 (Tex. 1997). However, mere subjective trust does not create a fiduciary relationship. *Id.* at 176; *Locke*, 363 S.W.2d at 253. The existence of such a relationship is determined from the actual facts of the relationship between the persons. *Id*.

The only factual basis appellant asserts for the proposition that such a relationship existed between Inez and himself is that Smithee "concluded the relationship was close enough that he should rely on Inez Trostle's statements that Joe Trostle did not want to be included in the lawsuit."[2] Whether or not Inez's attorney felt he was entitled to rely on statements made by Inez provides no objective facts from which the nature of the relationship between Inez and appellant may be determined. However, other summary judgment evidence, including the testimony of both appellant and Inez, showed that they were not particularly close because of some differences between Inez and appellant's wife, and that appellant and Inez had not spoken to each other since before the death of

[2]Inez claimed she did not tell Smithee that appellant did not want to participate, but her attorneys contacted appellant and told her that was what appellant said.

9

appellant's father.  They apparently did not even speak to each other at the funeral.  It cannot be said that appellant relied on Inez for moral, financial, or personal support or guidance.

Moreover, appellant testified in his deposition that, because of a telephone conversation with Smithee in August 1998, he knew he had not been included as a party to the wrongful death lawsuit and that the case was set to go to trial the following month.[3] He attempts to contradict this testimony with an affidavit in response to the motion for summary judgment in which he avers he did not know he was not a party plaintiff or entitled to any of the lawsuit proceeds until after the case went to trial.  He further states in that affidavit that Smithee did not inform him that he was not included in the lawsuit. However, an affidavit which conflicts with deposition testimony may not be used to raise a fact issue with respect to a motion for summary judgment without an explanation. *Farroux v. Denny's Restaurants, Inc.,* 962 S.W.2d 108, 111 (Tex.App.-- Houston [1st Dist.] 1997, no pet.); *but see Thompson v. City of Corsicana Housing Authority,* 57 S.W.3d 547, 557 (Tex.App.-- Waco 2001, no pet. h.) (holding that inconsistencies in the summary judgment evidence of a single witness create a fact issue).  The trial court sustained the objections of Inez to appellant's affidavit, and that ruling has not been challenged on appeal.  Although appellant knew prior to trial that he was not a party to the lawsuit, he made no attempt to intervene and did not immediately consult an attorney.  We do not

---

[3]The case did not actually go to trial until November 1998.

10

believe that Inez had a duty to inform appellant that he was not a party to the wrongful death lawsuit.

Appellant further contends that genuine issues of material fact have been raised as to a civil conspiracy to defraud. The elements of a civil conspiracy are (1) two or more persons, (2) an object to be accomplished, (3) a meeting of the minds on the object or course of action, (4) one or more unlawful, overt acts, and (5) damages as a proximate result. *Operation Rescue-National v. Planned Parenthood of Houston and Southeast Texas, Inc.,* 975 S.W.2d 546, 553 (Tex. 1998). Such a conspiracy existed, appellant argues, because both Inez and Earl told Smithee that appellant did not want to be included in the lawsuit for the purpose of depriving him of his opportunity to participate and the proceeds therefrom. The elements of a civil conspiracy as already stated require participation in some underlying tort. *Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex. 1996). Because we have determined that Inez had no duty to inform appellant he was not included in the wrongful death lawsuit and entitled to bring his own wrongful death lawsuit, and because there was no recovery by the estate with respect to any survivor claims, there have been no unlawful acts as required. Therefore, appellant's conspiracy claim must necessarily fail.

Appellant also challenges the trial court's failure to grant him equitable relief in the form of the imposition of a constructive trust, a temporary injunction, the appointment of a receiver, and an accounting. A constructive trust is imposed to redress wrong or prevent

11

unjust enrichment. *Meadows v. Bierschwale*, 516 S.W.2d 125, 131 (Tex. 1974). We have already found that Inez did not commit a wrongful act and therefore she could not profit from a wrong or be unjustly enriched. *See Tripp Village Joint Venture v. MBank Lincoln Centre, N.A.,* 774 S.W.2d 746, 750 (Tex.App.--Dallas 1989, writ denied). Thus, appellant is not entitled to a constructive trust.

The purpose of a temporary injunction is to preserve the status quo pending a trial on the merits. *Walling v. Metcalfe,* 863 S.W.2d 56, 58 (Tex. 1993). To be entitled to a temporary injunction, an applicant must show a probable injury and a probable right of recovery. *Id.* at 57. Once again, because we have determined that summary judgment, which is a final disposition, was correctly granted, there is no necessity for a temporary injunction to preserve the status quo.

Appellant cites no authority to support his argument that he is entitled to an equitable accounting or the appointment of a receiver. Suffice it to say that because we have concluded that appellant is not entitled to any of the settlement proceeds from the lawsuit as an heir and Inez did not wrongfully exclude him from the wrongful death cause of action, we can see no basis upon which to order an accounting or the appointment of a receiver.

Appellant additionally asserts, however, that he is entitled to an accounting from Inez as executrix of the estate based on section 149A(a) and (b) of the Probate Code. The version of that section in effect at the time in question provided in pertinent part:

(a) **Interested Person May Demand Accounting.**  At any time after the expiration of fifteen months from the date that an independent administration was created and the order appointing an independent executor was entered by the county court, any person interested in the estate may demand an accounting from the independent executor. . . .

(b) **Enforcement of Demand.**  Should the independent executor not comply with a demand for an accounting authorized by this section within sixty days after receipt of the demand, the person making the demand may compel compliance by an action in the county court or by a suit in the district court. After a hearing, the court shall enter an order requiring the accounting to be made at such time as it deems proper under the circumstances.

Tex. Prob. Code Ann. § 149A(a) and (b) (Vernon 1980).  Appellant requested a voluntary "complete accounting of the estate" by letter dated May 4, 1999, to the attorney representing the estate.  In response, the attorney indicated that an accounting would be provided.

This lawsuit was then filed on October 4, 1999, but no request for a statutory accounting was made in the petition.  In his first amended petition filed on December 15, 1999, and his second amended petition filed on July 10, 2000, appellant requested "an accounting of all income, revenue, expenses, transactions, transfers, disbursements, opportunities, investments of the Defendants, their agents, attorneys, representatives and affiliated companies and family members since January 1994."  However, this request was not made under the provisions of the Probate Code and is much broader than the statutory accounting required by the executor of an estate.  In his response to the motion for summary judgment, appellant requested for the first time both an equitable accounting and an accounting pursuant to the Probate Code.  Therefore, appellant's request for a statutory

13

accounting was not before the trial court at the time the summary judgment motion was filed, and there was no amended pleading to support that request. *See Jones v. Wal-Mart Stores, Inc.,* 893 S.W.2d 144, 148-49 (Tex.App.--Houston [1st Dist.] 1995, no writ). Thus, that complaint may not defeat the summary judgment.

In arguing that he presented a substantial amount of evidence to defeat Inez's no-evidence summary judgment motion, appellant alternatively complains that an inadequate amount of time had passed for discovery at the time the motion was filed, and thus it was not yet ripe for the filing of such a motion. The basis asserted for this position is that Smithee's deposition was taken on February 23, 2001, and significant revelations occurred "concerning the conduct of the Defendants and parties associated with them." Also, documents were produced at that deposition which had not been previously produced. Therefore, he posits, these facts, coupled with his motion to recuse, greatly prejudiced his ability to respond.

Appellant filed a motion for continuance of the summary judgment hearing on the basis that he had filed a motion to compel "the production of documents which are essential to Plaintiff's case" and a motion to recuse the trial judge who was a material fact witness. The motion was denied, and appellant has not challenged that court's ruling. Moreover, appellant has failed to state any specific "significant revelations" which were first learned at the Smithee deposition, or the nature of the documents which were

produced and the reasons why those documents being produced at that particular time prejudiced his ability to respond to the summary judgment motion.

Rule 166a(i) provides in relevant part:

(i) **No-Evidence Motion.** After adequate time for discovery, a party without presenting summary judgment evidence may move for summary judgment on the ground that there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial.

Tex. R. Civ. P. 166a(i). We review a court's decision on a request for continuance of a summary judgment motion because of an inadequate amount of time for discovery under an abuse of discretion standard, and the decision is made on a case specific basis. *McClure v. Attebury*, 20 S.W.3d 722, 729-30 (Tex.App.--Amarillo 1999, no pet.). The existence of adequate time for discovery is determined by the nature of the cause of action, the nature of the evidence necessary to controvert the motion, and the length of time the case has been active. *Specialty Retailers, Inc. v. Fuqua*, 29 S.W.3d 140, 145 (Tex.App.--Houston [14th Dist.] 2000, pet. denied); *Dickson Const., Inc. v. Fidelity & Deposit Co. of Maryland,* 5 S.W.3d 353, 356 (Tex.App.--Texarkana 1999, pet. denied). Other factors may include the amount of time the motion has been on file, whether the movant has requested stricter deadlines for discovery, the amount of discovery that has already taken place, and whether the discovery deadlines that are in place are specific or vague. *Fuqua*, 29 S.W.3d at 145.

15

The record shows that the original petition in this lawsuit was filed on October 4, 1999.  The motion for summary judgment was filed on January 25, 2001.  Appellant's motion to recuse was not filed until March 1, 2001, at the same time he filed his response to the motion for summary judgment.  The basis for that recusal motion was that the judge was likely to be a material witness in the case because he refused to submit jury questions in the wrongful death lawsuit brought by Inez and Earl which concerned appellant's rights.[4] The hearing on the motion for summary judgment took place on June 21, 2001, after appellant's recusal motion had been ruled on.

Furthermore, every case is governed by a discovery control plan.  Tex. R. Civ. P. 190.1.  Inez asserts, and appellant has not contradicted the assertion, that this case was governed by Level 2, under which all discovery must be conducted during the discovery period, which begins when suit is filed and continues until the earlier of 30 days before the date set for trial or nine months after the earlier of the date of the first oral deposition or the due date of the first response to written discovery.  Tex. R. Civ. P. 190.3(b)(1).  While evidence of the first written discovery does not appear in the record, the summary judgment evidence shows that appellant, Earl and Inez were all deposed in July 2000, and it was more than nine months later before the hearing on the motion for summary judgment took place.  The comment to the rule states that a "discovery period set by pretrial order should be adequate time opportunity for discovery unless there is a showing to the

_____

[4]Appellant's initial motion to recuse was denied on the basis that it did not comply with Rule 18a of the Rules of Civil Procedure.  Thereafter, appellant filed an amended motion to recuse, which was denied on April 24, 2001.

contrary, and ordinarily a motion under paragraph (i) would be permitted after the period but not before." *Id.* Notes and Comments. Appellant has not alleged or shown that the motion for summary judgment was filed prior to the end of the discovery period, and we find no abuse of discretion on the part of the trial court in refusing to grant a continuance.

Appellant also argues that his claims are not barred by the statute of limitations because his causes of action accrued at the time of the settlement agreement between the parties in the wrongful death lawsuit and the dispersion of the settlement proceeds, while Inez asserts that the various causes of action began to accrue on the date the wrongful death lawsuit was filed. The wrongful death lawsuit was filed on May 19, 1994, and this lawsuit on October 4, 1999, more than four years later. However, the settlement agreement in the wrongful death lawsuit was signed on May 27, 1999. We have discussed the merits of the summary judgment motion as if the statute of limitations was not an issue and found the trial court's granting of the motion to have been warranted. Therefore, it is not necessary for us to rule on the limitations issue.

Finally, in positing that he presented substantial evidence to defeat the no-evidence motion for summary judgment, appellant argues the same evidence which we have already discussed. Therefore, we overrule appellant's issue and affirm the judgment of the trial court.

John T. Boyd
Chief Justice

17

Publish.