# NO. 12-12-00358-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *VICTORIA RAE VANDERPOOL, JANIS CLAIRE STARK, AND RAY TODD VANDERPOOL, APPELLANTS* | § | *APPEAL FROM THE 114TH* |
| | § | *JUDICIAL DISTRICT COURT* |
| *V.* | | |
| *BARBARA SHARP VANDERPOOL, APPELLEE* | § | *SMITH COUNTY, TEXAS* |

## *OPINION*

Victoria Rae Vanderpool, Janis Claire Stark, and Ray Todd Vanderpool (Appellants) appeal from the summary judgment in favor of Appellee, Barbara Sharp Vanderpool. Appellants raise one issue on appeal. We affirm in part, reverse in part, and remand the case for further proceedings.

## BACKGROUND

This case involves a dispute over the disposition of property in which Ray Leland Vanderpool owned a life estate and Appellants owned the remainder interest. Appellants are Ray's children, and Barbara is their stepmother.

In the third and fourth codicils to their wills, Appellants' grandparents, Milton and Beulah Vanderpool, bequeathed a life estate in an undivided one-half of their real and personal property to Ray and the remainder interest to Appellants.

Milton died on February 26, 1986, and Beulah died on February 27, 1991. Their estates consisted of real and personal property, including the "family farm" and 213 Krugerrands.

On February 15, 2005, Ray and Barbara conveyed real property, including Ray's interest in the family farm, to Jack King, Jr. and his wife, Debra. The documents pertaining to the

transaction included a promissory note (the King note), payable to Ray and Barbara, which had a final maturity date of February 15, 2010.[1]

Ray died on March 1, 2007. When the King note matured, Barbara did not distribute any of its proceeds to Appellants.

On November 14, 2011, Appellants filed suit alleging "causes of action" for conversion and breach of fiduciary duty, a constructive trust, and an accounting. Appellants later amended their petition to include allegations of fraud and "breach of confidential relationship" as additional causes of action. Appellants' complaints are based on Barbara's failing to distribute their portion of the King note proceeds and withholding the Krugerrands after their father's death.

Barbara filed a motion for partial summary judgment contending the statute of limitations barred Appellants' causes of action for conversion and breach of fiduciary duty, and later responded that the discovery rule and doctrine of fraudulent concealment did not apply. In an amended order, the trial court granted Barbara's motion for partial summary judgment on Appellants' "causes of action for fraud, conversion, breach of fiduciary duty, accounting and a constructive trust." This appeal followed.

### SUMMARY JUDGMENT STANDARD OF REVIEW

Appellants contend that the trial court erred in granting Appellee's motion for partial summary judgment. We review a trial court's grant of summary judgment de novo. *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508 (Tex. 2010), *cert. denied*, 131 S. Ct. 1017, 178 L. Ed. 2d 829 (2011); *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005).

A defendant who moves for summary judgment has the burden of showing that there is no genuine issue of material fact concerning one or more essential elements of the plaintiff's claims, or must plead and conclusively establish an affirmative defense to show that she is entitled to judgment as a matter of law. *See* TEX. R. CIV. P. 166a(c); *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex. 1995); *In re Estate of Melchior*, 365 S.W.3d 794, 798 (Tex. App.—San Antonio 2012, pet. denied).

---

[1] We derived the information concerning the conveyance and the maturity date of the King note from Appellants' third amended original petition. The documents pertaining to this transaction are not in the record.

A defendant moving for summary judgment on the affirmative defense of limitations must conclusively prove when the cause of action accrued. *See* ***KPMG Peat Marwick v. Harrison Cnty. Hous. Fin. Corp.***, 988 S.W.2d 746, 748 (Tex. 1999). In addition, the defendant must negate the discovery rule, if it applies and has been pleaded or otherwise raised, by proving as a matter of law that there is no genuine issue of material fact about when the plaintiff discovered, or in the exercise of reasonable diligence should have discovered, the nature of its injury. *See* ***id.***; ***Velsicol Chem. Corp. v. Winograd***, 956 S.W.2d 529, 530 (Tex. 1997) (per curiam). Evidence is conclusive only if reasonable people could not differ in their conclusions, a matter that depends on the facts of each case. ***City of Keller v. Wilson***, 168 S.W.3d 802, 816 (Tex. 2005); *see also* ***Anderton v. Cawley***, 378 S.W.3d 38, 46 (Tex. App.—Dallas 2012, no pet.) (citations omitted) ("A matter is conclusively established if ordinary minds could not differ as to the conclusion to be drawn from the evidence.").

If the defendant establishes that a matter is barred by limitations, the plaintiff must then produce evidence raising an issue of fact in order to avoid summary judgment. ***In re Estate of Melchior***, 365 S.W.3d at 798. We review the record in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the motion. ***City of Lorena v. BMTP Holdings, L.P.***, 409 S.W.3d 634, 645 (Tex. 2013); ***Valence***, 164 S.W.3d at 661.

## CONVERSION—NOTE PROCEEDS

In their first issue, which comprises three subissues, Appellants challenge the trial court's rulings pertaining to their cause of action for the conversion of note proceeds (subissue 1), the discovery rule (subissue 2), and the doctrine of fraudulent concealment (subissue 3). We will address each subissue separately.

In their first subissue, Appellants contend that the trial court erred in granting summary judgment on Barbara's limitations defense to Appellants' cause of action for conversion of note proceeds. Barbara contends that this cause of action is time-barred because it accrued no later than October 3, 2007, and Appellants did not file suit until November 14, 2011.

**Applicable Law**

A conversion of personal property occurs upon the unauthorized and wrongful assumption and exercise of dominion and control over the personal property of another to the

3

exclusion of, or inconsistent with, the owner's rights. *Pipes v. Hemingway*, 358 S.W.3d 438, 449-50 (Tex. App.—Dallas 2012, no pet.) (citing *Waisath v. Lack's Stores, Inc.*, 474 S.W.2d 444, 447 (Tex. 1971)). The limitations period for a claim of conversion is two years. TEX. CIV. PRAC. & REM. CODE ANN. § 16.003(a) (West Supp. 2013). The date a cause of action accrues is a question of law. *See Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 567 (Tex. 2001).

Generally, a claim accrues when a wrongful act causes some legal injury, even if the fact of injury is not discovered until later, and even if all resulting damages have not yet occurred. *See S.V. v. R.V.*, 933 S.W.2d 1, 4 (Tex. 1996). In conversion actions where possession is initially lawful, and demand and refusal is useless or unequivocal acts of conversion have occurred, the cause of action accrues upon demand and refusal or discovery of facts supporting the cause of action, whichever occurs first. *Hofland v. Elgin-Butler Brick Co.*, 834 S.W.2d 409, 414 (Tex. App.—Corpus Christi 1992, no pet.); *see also Wells Fargo Bank Nw., N.A. v. RPK Capital XVI, L.L.C.*, 360 S.W.3d 691, 702 (Tex. App.—Dallas 2012, no pet.).

**Discussion**

Appellants' claim for conversion of note proceeds arises out of Ray and Barbara's sale of Ray's interest in the family farm to Debra and Jack King, Jr. The summary judgment evidence does not include a copy of the King note or any other document showing the terms of the note.

In order to be entitled to summary judgment as a matter of law, Barbara must have conclusively proved that Appellants' cause of action for conversion of the King note proceeds accrued more than two years prior to November 14, 2011—the date suit was filed. *See KPMG*, 988 S.W.2d at 748. She contends that the cause of action accrued no later than October 3, 2007, the date the inventory of Ray's estate was filed, because the inventory gave Appellants constructive notice that the proceeds of the note were from the sale of real property in which they owned a remainder interest.

*Constructive Notice*

When the doctrine of constructive notice is applied, it creates an irrebuttable presumption of actual knowledge of certain matters. *See HECI Exploration Co. v. Neel*, 982 S.W.2d 881, 887 (Tex. 1998); *Salinas v. Gary Pools, Inc.*, 31 S.W.3d 333, 336 (Tex. App.—San Antonio 2000, no pet.). The doctrine of constructive notice is usually applied when a person knows

4

where to find relevant information but failed to seek it out. *Little v. Smith*, 943 S.W.2d 414, 421 (Tex. 1997).

Persons interested in an estate admitted to probate are charged with notice of the contents of the probate records. *Mooney v. Harlin*, 622 S.W.2d 83, 85 (Tex. 1981). An "interested person" or "person interested" in an estate is "an heir, devisee, spouse, creditor, or any other having a property right in or claim against an estate being administered. . . ." TEX. EST. CODE ANN. § 22.018(1) (West, Westlaw current through the end of the 2013 Third Called Session of the 83rd Legislature).

Courts will impose constructive notice of the contents of a public record when there exists a need for stability and certainty, as in instances relating to titles to real property and in circumstances concerning in rem proceedings. *See HECI*, 982 S.W.2d at 887. But an unrecorded deed does not give constructive notice. *Gensheimer v. Kneisley*, 778 S.W.2d 138, 141 (Tex. App.—Texarkana 1989, no pet.) (citations omitted).

### *Summary Judgment Evidence*

Appellants are devisees under their grandparents' wills. Thus, Appellants are charged with constructive notice of their grandparents' probate records. *See* TEX. EST. CODE ANN. § 22.018(1); *Mooney*, 622 S.W.2d at 85. The inventories filed in Milton's and Beulah's estates list real property, stocks, bonds, mortgages, notes, cash, and miscellaneous property valued at more than one million dollars. Both inventories listed "13.812 acres, David Page Survey, Abstract 16, Tract 6, Smith County, Texas." Both inventories also listed acreage in the David Page Survey, Abstract 16, Tract 3, Smith County, Texas. Milton's inventory described this tract as 100.81 acres, while Beulah's inventory described it as 100.018 acres. Despite this discrepancy, it is undisputed that these tracts comprise the family farm.

Upon Ray's death, Barbara was appointed independent executrix of his estate. The inventory of Ray's estate was filed on October 3, 2007, and lists real and personal property valued at more than one million dollars. The inventory refers to the King note as "Jack King note [$]627,102.00." Even if we were to assume that this entry is sufficient to provide constructive notice generally, the summary judgment record does not contain Ray's will or any other probate documents that show Appellants qualified as "persons interested" in Ray's estate. *See* TEX. EST. CODE ANN. § 22.018(1). Thus, Barbara's summary judgment evidence does not

5

show that Appellants had constructive notice of Ray's probate records. *See id.*; ***Mooney***, 622 S.W.2d at 85.

Barbara further contends Appellants had "constructive notice" because their petition "quotes the recorded deed of trust executed by the Kings to demonstrate that the King note was the proceeds of the sale of property in which" Appellants claim an interest.[2] We have reviewed Appellants' third amended original petition, which was filed on July 24, 2012. The references to the King note show Appellants' actual notice that the note represented proceeds from the sale of the family farm, but there is no summary judgment evidence showing when they acquired this information, other than Ray Todd Vanderpool's statement that the release of lien was filed on March 3, 2010. *See **Madison v. Gordon***, 39 S.W.3d 604, 606 (Tex. 2001) ("Actual notice rests on personal information or knowledge[, while constructive] notice is notice the law imputes to a person not having personal information or knowledge."). Other than the inventory from Ray's estate, the summary judgment record does not include a copy of any recorded document pertaining to the King note. Therefore, we cannot determine the date on which any such documents provided constructive notice to those who should be charged with it.

## Conclusion

After viewing the evidence in the light most favorable to Appellants, indulging every reasonable inference, and resolving any doubts in Appellants' favor, we conclude that Barbara did not establish as a matter of law that Appellants' cause of action for conversion of note proceeds accrued more than two years prior to the date the suit was filed (November 14, 2011). *See **KPMG***, 988 S.W.2d at 748; ***Valence***, 164 S.W.3d at 661. Thus, the trial court erred in granting summary judgment on Appellants' cause of action for conversion as it relates to the King note proceeds. Accordingly, we sustain Appellants' first subissue.

## THE DISCOVERY RULE

In their second subissue, Appellants contend that Barbara owed them a fiduciary duty and did not prove as a matter of law that the discovery rule was inapplicable to their causes of action.

---

[2] In her brief, Barbara states, "Appellants[] have previously admitted that, if the discovery rule and doctrine of fraudulent concealment do not apply, Appellants' causes of action accrued on March 1, 2007." Barbara cites Appellants' third amended original petition to support this assertion. In their third amended petition, Appellants state that "the earliest date their causes of action could have accrued would have been March 1, 2007." We do not interpret this statement, or any other statement contained in Appellants' third amended original petition, as an acknowledgement that their causes of action accrued on March 1, 2007 absent application of the discovery rule or doctrine of fraudulent concealment.

Because we have determined that it was error to grant summary judgment on Appellants' claim for conversion of the King note proceeds, we limit our discussion to Appellants' causes of action for conversion of the Krugerrands and for breach of fiduciary duty.[3] *See* TEX. R. APP. P. 47.1.

**Applicable Law**

The discovery rule defers the accrual of a cause of action until the injury was or could have reasonably been discovered. *Shell Oil Co. v. Ross*, 356 S.W.3d 924, 929-30 (Tex. 2011). Similarly, when there has been a breach of fiduciary duty, the statute of limitations does not begin to run until the claimant knew or should have known facts that in the exercise of reasonable diligence would have led to the discovery of the wrongful act. *Little*, 943 S.W.2d at 420. The discovery rule applies only when the nature of the plaintiff's injury is both inherently undiscoverable and objectively verifiable. *Shell Oil*, 356 S.W.3d at 930 (citations omitted). An injury is inherently undiscoverable if by its nature, it is unlikely to be discovered within the prescribed limitations period despite due diligence. *S.V.*, 933 S.W.2d at 7 (citations omitted). Whether an injury is inherently undiscoverable is determined on a categorical basis, and the focus is on the type of, rather than the particular, injury involved. *Shell Oil*, 356 S.W.3d at 930; *Via Net v. TIG Ins. Co.*, 211 S.W.3d 310, 314 (Tex. 2006).

*Inherently Undiscoverable*

In *S.V.*, the Texas Supreme Court held that the common thread in "inherently undiscoverable injuries" is that "the wrong and injury were unknown to the plaintiff because of their very nature and not because of any fault of the plaintiff. . . ." *S.V.*, 933 S.W.2d at 7. An injury's discoverability is not determined solely by the nature of the injury, but also on the circumstances in which it occurred, as well as the plaintiff's diligence. *Id.*

The discovery rule does not excuse a party from exercising reasonable diligence in protecting its own interests. *See* *Computer Assoc. Int'l, Inc. v. Altai, Inc.*, 918 S.W.2d 453, 457 (Tex. 1996); *see also* *Conoco, Inc. v. Amarillo Nat'l Bank*, 14 S.W.3d 325, 328 (Tex. App.—Amarillo 2000, no pet.). But a plaintiff is relieved of the responsibility of diligent inquiry if the injury is the result of fiduciary misconduct. *S.V.*, 933 S.W.2d at 8. This is because the courts

---

[3] The courts sometimes refer to informal fiduciary relationships as confidential relationships. *See* *Thigpen v. Locke*, 363 S.W.2d 247, 253 (Tex. 1962); *Lee v. Hasson*, 286 S.W.3d 1, 14 (Tex. App.—Houston [14th Dist.] 2007, pet. denied). Because the existence of a confidential relationship may give rise to the imposition of a fiduciary duty, we need only address Appellants' cause of action for breach of fiduciary duty and not breach of confidential relationship. *See* *Thigpen*, 363 S.W.2d at 253; *Lee*, 286 S.W.3d at 14. We address Appellants' cause of action for fraud in a separate section of this opinion.

have determined that the type of injury suffered from fiduciary misconduct is inherently undiscoverable. *See id.*

*Fiduciary Relationship*

The courts are reluctant to recognize a fiduciary relationship because it requires a person to place someone else's interests above her own. *See **Lindley v. McKnight***, 349 S.W.3d 113, 124 (Tex. App.—Fort Worth 2011, no pet.). Informal fiduciary relationships, sometimes referred to as "confidential relationships," may give rise to a fiduciary duty where one person trusts in and relies on another, whether the relation is a moral, social, domestic, or purely personal one. *See **Thigpen v. Locke***, 363 S.W.2d 247, 253 (Tex. 1962); ***Lee v. Hasson***, 286 S.W.3d 1, 14 (Tex. App.—Houston [14th Dist.] 2007, pet. denied). To determine whether a fiduciary duty should be imposed, the courts review the actualities of the relationship between the parties involved. *See **Thigpen***, 363 S.W.2d at 253.

A party claiming the existence of an informal fiduciary relationship (confidential relationship) must have been accustomed to being guided by the judgment or advice of the other. ***Sw. Energy Prod. Co. v. Berry-Helfand***, 411 S.W.3d 581, 592 (Tex. App.—Tyler 2013, pet. filed) (***SEPCO***) (citing ***Thigpen***, 363 S.W.2d at 253); *see also **Lee***, 286 S.W.3d at 14 (citations omitted). Subjective trust, or a longstanding friendship or cordiality, standing alone, is not enough to create a relationship that imposes a fiduciary duty on another. *See **Lee***, 286 S.W.3d at 14-15; ***Trostle v. Trostle***, 77 S.W.3d 908, 914 (Tex. App.—Amarillo 2002, no pet.). The existence of a fiduciary relationship, whether formal or informal is generally a question of fact. *See **Lee***, 286 S.W.3d at 14. But when the issue is one of no evidence or the facts are undisputed, it becomes a question of law. *See **Meyer v. Cathey***, 167 S.W.3d 327, 330-31 (Tex. 2005); ***Trostle***, 77 S.W.3d at 914-15. If a fiduciary relationship does not exist, the plaintiff is not relieved of the burden of due diligence. *See **S.V.***, 933 S.W.2d at 8.

**Discussion**

Appellants contend that their injury is inherently undiscoverable because they had a fiduciary relationship with Barbara. Barbara contends that there was no fiduciary relationship and that Appellants' injury was not inherently undiscoverable. To resolve this issue, we consider the nature and circumstances of Appellants' injury, the actualities of their relationship with Barbara, and whether Appellants had a duty to conduct a diligent inquiry to protect their remainder interest in life estate property. *See id.* at 7-8; ***Thigpen***, 363 S.W.2d at 253.

*The Nature and Circumstances Surrounding Appellants' Injury*

As pertinent to this section, Appellants' suit against Barbara is based upon the deprivation of their undivided one-half remainder interest in 213 Krugerrands. But their grandparents' third and fourth codicils provided that the life estate tenant "shall not be required to account for or repair any waste, injury or damage to or depreciation of" life estate property and shall not be required "to replace any part thereof as may be used up . . . or become destroyed by any cause or reason during the term of such life estate." Thus, the nature of Appellants' injury is the deprivation of a remainder interest that is subject to waste, injury, damage, depreciation, destruction, and loss by the life tenant.

Appellant Victoria Vanderpool testified that about two days after her father's death, Barbara stated that she did not know what she would live on because "'the kids are going to be receiving all the oil checks from now on.'" Based upon statements made by her uncle and her personal knowledge of Ray's "financial irresponsibility," Victoria assumed that Barbara's statement meant the life estate assets "had been used up, except for the oil and gas interests." Victoria testified further that because Barbara was appointed executrix of Ray's estate and was the trustee of a credit shelter trust created during Ray's lifetime, she relied on the fact that Barbara "would know of any other property that she and [her] father enjoyed during his lifetime."

Ray Todd Vanderpool testified that Barbara forwarded him oil and gas royalties and payments from property (the Garrett property) unrelated to the family farm and the King note that she said were life estate assets. These payments were not related to the family farm or the King note. When the promissory note on the Garrett property matured, Barbara told Ray Todd that Appellants were not entitled to the proceeds of the note because she was mistaken about the nature of the property. Ray Todd testified that he relied on Barbara's representations involving the distribution of life estate assets until she refused to distribute the proceeds from the note on the Garrett property in April 2010 when the release of lien was filed. Thus, it was in April 2010 that Ray Todd "became suspicious that [Barbara] had not been honest with [him] and [his] siblings about the assets [they] should have received from [their] grandparents' estates."

*Actualities of Relationship*

Barbara married Appellants' father in 1994. She testified that when they married, there were "hard feelings" between Appellants and their father. In an effort to improve Appellants'

relationship with their father, Barbara invited the family together for the "first Christmas," and "encouraged Vicky [Appellant Victoria Ray Vanderpool] to bring her friend [even though] Ray was opposed to that." Barbara "counseled" with Appellant Janis Claire Stark after her daughter was born with a cleft palate because "Jan" "felt like it was because [of something she had done]." Although Barbara was not sure whether her efforts improved the children's relationship with their father, she confirmed that it was her desire to help and that she attempted to develop a trust relationship with Appellants as a way to improve their relationship with Ray. Barbara testified that she counseled with Appellants on "spiritual matters" over the telephone, but not on a regular basis.

Barbara thought she had a trust relationship with Appellants, but testified that Appellants "stopped calling" her after Ray's death. She confirmed that she spoke with Ray Todd Vanderpool about financial matters and purchasing a vehicle, and he did not charge her for his advice. Barbara testified that after Ray's death, Jan called her "one time," and that although there was no direct hostility, she felt a degree of "unfriendliness" from Appellants. Barbara further explained that she felt her relationship with Victoria had ended because she called to speak to Victoria after she had surgery, but Victoria never returned her phone call. Barbara also testified that after she told Ray Todd that Appellants were not entitled to the payoff of a note that Barbara had earlier (and mistakenly) believed was life estate property, he "never called again."

There are no other references in the summary judgment record about Barbara's relationship with Appellants.

### Responsibility of Diligent Inquiry

Although Barbara may have thought she had a trust relationship with Appellants, there is no evidence that Appellants were "accustomed to being guided" by Barbara's judgment or advice. *See SEPCO*, 411 S.W.3d at 592. In fact, there is no evidence that Appellants relied on Barbara for anything other than disbursement of the oil and gas royalties and payments from the Garrett property. At best, the evidence shows a subjective trust between the parties, but this is not sufficient to establish a fiduciary or confidential relationship, or to impose a fiduciary duty on Barbara. *See SEPCO*, 411 S.W.3d at 593-94; *see also Trostle*, 77 S.W.3d at 914-15.

Because there was no fiduciary relationship, Appellants had a duty to conduct a diligent inquiry in order to discover their injury. *See S.V.*, 933 S.W.2d at 8. The exercise of due

10

diligence is generally a question of fact, but if the evidence is such that reasonable minds could not differ as to its effect, it becomes a question of law. *See Conoco*, 14 S.W.3d at 328.

Victoria testified that she was aware of her father's "financial irresponsibility" and believed that the life estate assets "had been used up." But there is no evidence that Victoria, or any of the other appellants, made any actual inquiries of Barbara, or anyone else, about the existence of any property in which they acquired a remainder interest under their grandparents' wills.

During her deposition, Barbara was asked why she did not provide Appellants a list of assets following their father's death other than the inventory filed in the probate court. She responded that Appellants "never ask[ed]. They never came to me. They never called me. No. I would have given them the list had they ask[ed]. I gave them everything that I could give them."

## Conclusion

After reviewing the circumstances and nature of Appellants' injury, the actualities of their relationship with Appellee, and the diligence Appellants used to protect their remainder interest, we conclude that Appellants' injury was not of the type that is inherently undiscoverable. *See S.V.*, 933 S.W.2d at 7-8; *Thigpen*, 363 S.W.2d at 253. Appellants were on notice by their grandparents' probate records that they would have no recourse if their remainder interest in life estate property was wasted, injured, damaged, depreciated, destroyed, or lost by their father, the life tenant. *See* TEX. EST. CODE ANN. § 22.018(1); *Mooney*, 622 S.W.2d at 85. But they failed to exercise due diligence in identifying what life estate property existed at the time of Ray's death. *See Conoco*, 14 S.W.3d at 328; *Hunt Oil Co. v. Live Oak Energy, Inc.*, 313 S.W.3d 384, 392 (Tex. App.—Dallas 2009, pet. denied) ("Failing to even ask . . . is not due diligence.") (quoting *Via Net*, 211 S.W.3d at 314).

As a result, the discovery rule does not apply to defer Appellants' cause of action for conversion of the Krugerrands. Therefore, the trial court did not err in granting summary judgment on Appellants' cause of action for conversion of the Krugerrands based on the inapplicability of the discovery rule. Because there is no fiduciary relationship, the trial court also did not err in granting summary judgment on Appellants' cause of action for breach of fiduciary duty. We overrule Appellants' second subissue.

In their third subissue, Appellants contend that the trial court erred in granting summary judgment on Barbara's limitation defense because they produced sufficient evidence to raise material issues of fact as to each element of fraudulent concealment. Because we have concluded that a fiduciary relationship did not exist between Barbara and Appellants, we limit our discussion to Appellants' cause of action for conversion of the Krugerrands. *See* TEX. R. APP. P. 47.1.

## Applicable Law

Fraudulent concealment is a fact-specific, equitable doctrine. *Shell Oil*, 356 S.W.3d at 927. It is an affirmative defense to limitations based on the rationale that a person cannot avoid liability for her actions by deceitfully concealing wrongdoing until limitations has run. *See id.* (quoting *S.V.*, 933 S.W.2d at 6). Under this doctrine, a plaintiff must establish an underlying wrong, and that (1) the defendant actually knew the plaintiff was in fact wronged, and (2) concealed that fact to deceive the plaintiff. *BP Am. Prod. Co. v. Maxwell*, 342 S.W.3d 59, 67 (Tex. 2011); *see also Shell Oil*, 356 S.W.3d at 927. The fraudulent concealment doctrine tolls the limitations period until "the fraud is discovered or could have been discovered with reasonable diligence." *BP*, 342 S.W.3d at 67 (citations omitted).

## Discussion

Appellants contend that the underlying wrong in their conversion action for the Krugerrands occurred when Barbara sold the Krugerrands. In her deposition, Barbara testified that the property in which Ray had a life estate included guns and "gold" (Krugerrands). Barbara later testified that she was not aware that Ray inherited a life estate in the Krugerrands, did not make any effort to determine whether the Krugerrands were life estate property, and did not include them on the inventory of Ray's estate. Barbara explained that Ray and her attorney told her that the "gold was mine," that she could do whatever she wanted with it, and that she sold the Krugerrands in reliance on their statements.

Barbara sold the Krugerrands on October 10, 2007, but stated on her 2007 tax return that she acquired 86 ounces of gold on March 1, 2007 (the date of Ray's death). During her deposition, Barbara was asked whether it was reasonable for Appellants to expect her to be "fair and honest" in the distribution of her late husband's life estate property. She responded, "I thought—I thought that I was."

12

Appellants contend that Barbara concealed the fact that she sold the Krugerrands by misrepresenting the extent of the remaining life estate assets. In support of this contention, they point to Barbara's statement that "she did not know what she was going to live on since 'the kids are going to be receiving all the oil checks from now on,'" and her forwarding oil and gas royalties and payments on the Garrett property to Appellants as acts of deceit. But there is no evidence that Barbara ever concealed the fact that she sold the Krugerrands or that she concealed her sale of the Krugerrands in an effort to deceive Appellants.

Appellants contend that their reliance on Barbara's words and conduct excused them from inquiring into the existence of property in which they held a remainder interest. As support for this argument, Appellants direct us to *Trinity-Universal Insurance Co. v. Marshall*, 101 S.W.2d 606 (Tex. Civ. App.—Austin 1937, writ dism'd w.o.j.). In *Trinity*, the plaintiff sued a Texas corporation for fraud alleged to have been perpetrated upon him in the sale of stock in that corporation. *Id*. at 608. The corporation argued that the statute of limitations barred the plaintiff's claims because he came into possession of facts more than two years before he filed suit that disclosed the falsity of statements that he had previously relied upon. *Id*. at 609. Thus, the corporation contended that had the plaintiff exercised reasonable prudence and pursued the information he had, his investigation would have revealed the falsity. *Id*. The court rejected the corporation's argument on the basis that officers and directors of a corporation have a fiduciary relationship with its stockholders, and excused the plaintiff's lack of inquiry due to the "relationship of trust and confidence" between the parties. *Id*. at 611. Failure to inquire, the court stated, is also excused when the conduct or continued representations of the guilty party lull the injured party into a sense of security or conceal any suspicious circumstances. *Id*.

The Austin court's holding is inapplicable in this case because it implicitly concerns the application of the discovery rule to a cause of action for fraud where a fiduciary relationship existed. *See generally id.* Here, the issue is whether the doctrine of fraudulent concealment applies to Appellants' cause of action for conversion of the Krugerrands. Appellants' alleged injury relating to their cause of action for conversion of the Krugerrands would have been discoverable upon the exercise of reasonable diligence as previously stated in this opinion. Furthermore, there is no evidence that Barbara concealed her sale of the Krugerrands or that she concealed the sale of the Krugerrands in order to deceive them as required under the doctrine of fraudulent concealment. *See BP*, 342 S.W.3d at 67. As a result, the doctrine of fraudulent

concealment does not apply to toll the limitations period for Appellants' cause of action for conversion of the Krugerrands. *See id.* Thus, the trial court did not err in granting summary judgment on Appellants' cause of action for conversion of the Krugerrands based on the inapplicability of the doctrine of fraudulent concealment. Accordingly, we overrule Appellants' third issue.

## OTHER CAUSES OF ACTION AND REMEDIES

In their brief, Appellants challenge the trial court's order granting Barbara's motion for summary judgment on "each" of their causes of action. We note that in Barbara's motion for partial summary judgment, she contended that Appellants' causes of action for conversion and breach of fiduciary duty were time-barred, mentioned that constructive trust was a remedy and not a cause of action, and stated that she was not seeking summary judgment on Appellants' claim for an accounting. Appellants subsequently amended their petition adding fraud and breach of confidential relationship as causes of action and then responded to Barbara's motion for partial summary judgment. In their first amended response, Appellants clarified that their alleged causes of action were for conversion, breach of fiduciary duty, and fraud. They also raised the discovery rule and the doctrine of fraudulent concealment as defenses to Barbara's assertion of limitations.

In Barbara's reply to Appellants' first amended response, she argued that the discovery rule and the doctrine of fraudulent concealment did not apply to Appellants' causes of action for conversion and breach of fiduciary duty. However, she did not address the application of the discovery rule or the doctrine of fraudulent concealment to Appellants' cause of action for fraud. Nor did she raise limitations as a defense to Appellants' cause of action for fraud.

The trial court's order granting Barbara's motion for partial summary judgment stated that Appellants take nothing by their causes of action for "conversion, breach of fiduciary duty, accounting and a constructive trust." The order was signed on August 8, 2012. On August 27, 2012, Appellants filed a motion to reconsider the order granting Barbara's motion for partial summary judgment. On August 28, 2012, Barbara filed a motion to modify the trial court's order granting her motion for partial summary judgment. In her motion, she requested that the trial court modify its order to include Appellants' cause of action for fraud.

14

Appellants did not respond to Barbara's motion to modify. The trial court granted the motion and amended its order to state that Appellants "take nothing by their causes of action for fraud, conversion, breach of fiduciary duty, accounting and a constructive trust. . . ."

By its amended order, the trial court granted more relief than Barbara requested in her motion for partial summary judgment. Generally, this kind of excessive relief is reversible error. *See Nall v. Plunkett*, 404 S.W.3d 552, 555 (Tex. 2013) (citations omitted) ("A trial court cannot grant summary judgment on grounds that were not presented."). But Appellants failed to object to Barbara's motion to modify at the trial court, and do not argue here that the trial court improperly granted relief not requested by Barbara's motion for partial summary judgment. As a result, this error is waived. *See* TEX. R. APP. P. 33.1; *San Jacinto River Auth. v. Duke*, 783 S.W.2d 209, 209-10 (Tex. 1990) (per curiam) ("A court of appeals may not reverse a trial court's judgment in the absence of properly assigned error."); *see, e.g.*, *Zertuche v. Bexar County*, No. 04-08-00895-CV, 2009 WL 2183631, at \*1 n.1 (Tex. App.—San Antonio July 22, 2009, pet. denied) (mem. op.) ("[W]e note that the trial court's order grants more relief than requested which would typically result in a partial reversal of the trial court's order[, but] Zertuche was required to bring forward a point of error complaining of the [excessive relief], or, at the very least, argue in his brief that excess relief was improperly granted. . . . Because Zertuche did not raise this complaint in his brief, it is waived.") (citations omitted).

## DISPOSITION

Having sustained Appellants' first subissue, we *reverse* the trial court's judgment granting Barbara's motion for partial summary judgment as it pertains to Appellants' cause of action for conversion of the King note proceeds. In all other respects, we *affirm* the judgment of the trial court. *See* TEX. R. APP. P. 43.2(a). We *remand* the case for further proceedings consistent with this opinion. *See* TEX. R. APP. P. 43.2(d).

JAMES T. WORTHEN
Chief Justice

Opinion delivered April 23, 2014.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(PUBLISH)

15



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**APRIL 23, 2014**

**NO. 12-12-00358-CV**

**VICTORIA RAE VANDERPOOL, JANIS CLAIRE STARK,
AND RAY TODD VANDERPOOL,**
Appellants
V.
**BARBARA SHARP VANDERPOOL,**
Appellee

Appeal from the 114th District Court

of Smith County, Texas (Tr.Ct.No. 11-3178-A/B/S1)

THIS CAUSE came to be heard on the oral arguments, appellate record and the briefs filed herein, and the same being considered, because it is the opinion of this court that there was error in the judgment of the court below, it is ORDERED, ADJUDGED and DECREED by this court that the trial court's judgment granting the motion for partial summary judgment filed by Appellee, **BARBARA SHARP VANDERPOOL,** as it pertains to Appellants', **VICTORIA RAE VANDERPOOL, JANIS CLAIRE STARK, AND RAY TODD VANDERPOOL,** cause of action for conversion of the King note proceeds be **reversed**; that in all other respects, the judgment of the trial court is **affirmed** in accordance with the opinion of the court; that the case be **remanded for further proceedings** consistent with this opinion; and that this decision be certified to the court below for observance.

It is further ORDERED that the costs of court incurred in this appellate court be assessed one-half against Appellants, **VICTORIA RAE VANDERPOOL, JANIS CLAIRE STARK, AND RAY TOOD VANDERPOOL**, and one-half against Appellee, **BARBARA SHARP VANDERPOOL**.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*