Jacquelyn C. GREGAN, Individually, and Jacquelyn C. Gregan, P.C. d/b/a Haskins & Gregan, formerly d/b/a The Haskins, Gregan & Kelly Law Firm, Appellants,

v.

Lannie Todd KELLY, Appellee.

No. 01–09–00685–CV.

Court of Appeals of Texas, Houston (1st Dist.).

May 19, 2011.

Joshua Paul Davis, Faubus & Scarbororough LLP, Houston, TX, for Appellants.

Andy Vickery, Vickery, Waldner & Mallia, L.L.P., Houston, TX, for Appellee.

Panel consists of Justices JENNINGS, HIGLEY, and BROWN.

## OPINION

LAURA CARTER HIGLEY, Justice.

Appellant, Jacquelyn C. Gregan,[1] appeals from a jury verdict finding that Gregan breached a fiduciary duty she owed to appellee, Lannie Todd Kelly. In four issues, Gregan argues the trial court erred by (1) denying her motion for summary judgment; (2) denying her motion for directed verdict; (3) denying her motions for judgment notwithstanding the verdict and new trial; and (4) denying her motion in limine seeking to exclude certain parol evidence.

We reverse and render.

## Background

In 2002, Kelly began working for Gregan's law firm, then known as Haskins &

---

1. Jacquelyn C. Gregan, P.C. d/b/a Haskins & Gregan, formerly d/b/a The Haskins, Gregan & Kelly Law Firm was also a party at trial and identified as an appellant in this matter. No verdict or judgment was obtained against it, nor has any point of error been raised that would affect it. Accordingly, we do not consider it a proper party to this appeal. *Gupta v. E. Idaho Tumor Inst., Inc.,* 140 S.W.3d 747, 751 n. 4 (Tex.App.-Houston [14th Dist.] 2004, pet. denied).

Gregan. In 2004, an agreement was reached to add Kelly's name to the firm. The firm became known as The Haskins, Gregan & Kelly Law Firm. At all times relevant to this appeal, however, Gregan remained the sole owner of the business.

In March 2006, Gregan, Kelly, and the business signed a written employment agreement, commemorating in writing the parties' earlier oral agreement. The agreement provided it had commenced on July 1, 2002. It identified Kelly as "a profit-sharing partner (non-owner)" of the law firm. Under the terms of the agreement, Kelly received an annual salary, the business paid for certain expenses incurred by Kelly, and, after each calendar year, Kelly would receive 20% of the law firm's net profits after accounting for expenses and maintaining a certain balance for operations. Additionally, the agreement provided that Kelly would have the right of first refusal to obtain ownership of the business if it were to be sold, traded, or otherwise ceased to perform its functions under its current ownership.

Around September 2006, Gregan terminated Kelly, effective immediately. Kelly brought suit in April 2007. The claims ultimately presented to the jury were Kelly's claims for breach of contract, statutory fraud, and breach of fiduciary duty.

The evidence at trial established that, during her deposition, Gregan stated that she believed that she had fiduciary obligations to the law firm and to all the employees who worked there. The testimony also established that, after the deposition, Gregan entered corrections to her deposition on an errata sheet. Gregan testified that she explained in the errata sheet that, at the time of the deposition, she did not understand the legal definition of "fiduciary duty" and that she did not believe that she owed a fiduciary duty to Kelly or any other employee.

Additionally, at the end of Gregan's cross-examination, the following colloquy occurred:

Q: .... Prior to [an occasion when Kelly claimed he had been underpaid], did you trust him and have confidence that he would do what was in your interest and in the firm's interest?

A. Yes.

Q. And do you believe that he trusted you and had confidence that you would do what was in his professional interest?

A. Yes. I—we and we did before that time.

The trial court denied Gregan's motion for directed verdict on her claim that no fiduciary relationship existed between her and Kelly. Subsequently, the jury found, among other things: (1) there was no agreement between Gregan and Kelly that Kelly could be terminated only for good cause; (2) Gregan did not commit statutory fraud; (3) a fiduciary relationship existed between Gregan and Kelly based on "a relationship of trust and confidence"; and (4) Gregan failed to comply with her fiduciary duty to Kelly.

## Fiduciary Duty

In her second issue, Gregan argues that the trial court erred in denying her motion for directed verdict based on the argument that there was no evidence that Gregan owed Kelly any fiduciary duties that would affect his termination.

### A. Standard of Review

A complaint about the denial of a motion for directed verdict is the same as a challenge to the legal sufficiency of the evidence. *City of Keller v. Wilson*, 168 S.W.3d 802, 823 (Tex.2005). Under this standard, we must view the evidence and

inferences in the light most favorable to the jury's findings. *Id.* at 807. When, as here, an appellant attacks the legal sufficiency of an adverse finding on an issue for which it did not have the burden of proof, it must demonstrate that there is no evidence to support the adverse finding. *Croucher v. Croucher,* 660 S.W.2d 55, 58 (Tex.1983). Such a challenge will be sustained only when (1) there is a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence conclusively establishes the opposite of a vital fact. *King Ranch, Inc. v. Chapman,* 118 S.W.3d 742, 751 (Tex.2003); *see also City of Keller,* 168 S.W.3d at 810.

## B. Analysis

■ To recover on a breach of fiduciary duty claim, the plaintiff must first establish the existence of a duty, that is, the existence of a fiduciary relationship. *See Meyer v. Cathey,* 167 S.W.3d 327, 330–31 (Tex.2005) (discussing interchangeably whether fiduciary relationship exists and whether fiduciary duty existed); *Priddy v. Rawson,* 282 S.W.3d 588, 599 (Tex.App.-Houston [14th Dist.] 2009, pet. denied) (identifying first element of fiduciary duty claim as existence of fiduciary relationship and second element as breach of duty created by that relationship).

■ There are two categories of fiduciary relationships. *Meyer,* 167 S.W.3d at 330–31; *Priddy,* 282 S.W.3d at 599. The first is a formal fiduciary relationship, such as attorney-client, principal-agent, and trustee-beneficiary relationships, as well as partners in a partnership. *Chapman Children's Trust v. Porter & Hedges, L.L.P.,* 32 S.W.3d 429, 439 (Tex.App.-Houston [14th Dist.] 2000, pet. denied). The second is an informal fiduciary relationship, "where one person trusts in and relies on another, whether the relation is a moral, social, domestic, or purely personal one." *Schlumberger Tech. Corp. v. Swanson,* 959 S.W.2d 171, 176 (Tex.1997). This second category is also known as a "confidential relationship." *Chapman Children's Trust,* 32 S.W.3d at 439.

■ Kelly's live petition asserted a claim for breach of a partnership agreement. This claim was not submitted to the jury, however. Accordingly, it has been waived. *See* Tex.R. Civ. P. 279 (providing "[u]pon appeal all independent grounds of recovery or of defense not conclusively established under the evidence and no element of which is submitted or requested are waived"). For purposes of this appeal, then, there was no partnership agreement between the parties and, by extension, no formal fiduciary relationship based on any such partnership.

■ Kelly argues that an informal fiduciary relationship existed, and the jury found such a relationship in answering one of the jury questions.[2] We turn, then, to determine whether there was sufficient evidence to support the finding of an informal fiduciary relationship. *See Romero v. KPH Consolidation, Inc.,* 166 S.W.3d 212, 221 (Tex.2005) (holding sufficiency of evidence review limited by questions submitted to jury).

2. The relevant question submitted to the jury asked:
> Did a relationship of trust and confidence exist between Gregan and Kelly?
> A relationship of trust and confidence existed if Kelly justifiably placed trust and confidence in Gregan to act in Kelly's best interest. Kelly's subjective trust and feelings alone do not justify transforming arm's-length dealings into a relationship of trust and confidence.

■ A fiduciary relationship is an extraordinary one and will not be lightly created. *Hoggett v. Brown*, 971 S.W.2d 472, 488 (Tex.App.-Houston [14th Dist.] 1997, pet. denied). "It is well settled that 'not every relationship involving a high degree of trust and confidence rises to the stature of a fiduciary relationship.'" *Meyer*, 167 S.W.3d at 330 (quoting *Schlumberger*, 959 S.W.2d at 176–77). "A person is justified in placing confidence in the belief that another party will act in his or her best interest only where he or she is accustomed to being guided by the judgment or advice of the other party, and there exists a long association in a business relationship, as well as personal friendship." *Hoggett*, 971 S.W.2d at 488.

■ Additionally, courts remain cautious to create informal fiduciary relationships in business arrangements.

> The fact that one businessman trusts another, and relies upon his promise to perform a contract, does not rise to a confidential relationship. Every contract includes an element of confidence and trust that each party will faithfully perform his obligation under the contract. Neither is the fact that the relationship has been a cordial one, of long duration, evidence of a confidential relationship.

*Crim Truck & Tractor Co. v. Navistar Int'l Transp. Corp.*, 823 S.W.2d 591, 594–95 (Tex.1992), *superseded by statute on other grounds as noted in Subaru of Am., Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 225–26 (Tex.2002).

Courts review a variety of facts for determining whether an informal fiduciary relationship exists. The overarching consideration, however, is the nature of the relationship between the parties. *See Thigpen v. Locke*, 363 S.W.2d 247, 253 (Tex.1962) (holding "[t]he existence of the fiduciary relationship is to be determined from the actualities of the relationship between the persons involved").

■ In reviewing the relationship between the parties, one factor we consider is whether the party claiming to be owed a fiduciary relationship justifiably placed special confidence in the other party to act in his best interest. *See Trostle v. Trostle*, 77 S.W.3d 908, 915 (Tex.App.-Amarillo 2002, no pet.) (holding, to establish fiduciary relationship, evidence must demonstrate plaintiff actually relied on purported fiduciary "for moral, financial, or personal support or guidance"); *Lee v. Hasson*, 286 S.W.3d 1, 14–15 (Tex.App.-Houston [14th Dist.] 2007, pet. denied) (same). An informal fiduciary relationship requires proof that, because of a close or special relationship, the plaintiff "is in fact accustomed to be guided by the judgment or advice" of the other. *Thigpen*, 363 S.W.2d at 253.

Kelly argues that Gregan conceded that they had a relationship of trust and confidence. For support, he cites to the following colloquy:

> Q: .... Prior to [an occasion when Kelly claimed he had been underpaid], did you trust him and have confidence that he would do what was in your interest and in the firm's interest?
>
> A. Yes.
>
> Q. And do you believe that he trusted you and had confidence that you would do what was in his professional interest?
>
> A. Yes. I—we—and we did before that time.

Kelly argues on appeal that this testimony is "tantamount to a judicial admission." Kelly also relies on Gregan's deposition testimony, presented at trial, in which she stated that she believed she owed all of her employees, including Kelly, a fiduciary re-

lationship. While Gregan later attempted to correct that statement, the jury was permitted to resolve this conflict. *See Benavente v. Granger*, 312 S.W.3d 745, 749 (Tex.App.-Houston [1st Dist.] 2009, no pet.) (holding conflicts in witnesses' testimony is credibility question for jury to resolve).

█ The mere existence of mutual confidence and trust in the other party in a transaction does not, in itself, however, create an informal fiduciary relationship. *See Schlumberger*, 959 S.W.2d at 177 (holding "the fact that the parties to a transaction trust one another will not, in and of itself, establish a finding of a confidential relationship"). Indeed, even relationships that involve "a high degree of trust or confidence" do not always rise to the level of an informal fiduciary relationship. *Meyer*, 167 S.W.3d at 330.

In *Crim Truck*, the parties' contract specifically stated, "This is a personal agreement, involving mutual confidence and trust. . . ." 823 S.W.2d at 595 n. 7. The Texas Supreme Court held, "We are unpersuaded that this language was ever intended to inject an element of personal trust and confidence above and beyond that which is ordinarily contemplated by parties to contracts of this type." *Id.* at 595–96. As the *Crim Truck* court made clear, particularly in the business arena, trust and reliance alone are not sufficient ingredients to create a fiduciary relationship. *See id.* at 595.

The evidence on which Kelly relies concerns the subjective belief of the parties. Kelly's subjective trust and feelings alone do not justify transforming the parties' arm's-length dealings into a relationship of trust and confidence. If the written language in *Crim Truck* was not sufficient to establish the existence of a fiduciary relationship, then similar testimony by Gregan of the parties' subjective beliefs is not enough to create a fiduciary relationship.

█ We also examine the length of the parties' relationship. In order for a fiduciary relationship to exist, the parties must have had a special relationship of trust and confidence that existed "prior to, and apart from, the agreement made the basis of the suit." *Meyer*, 167 S.W.3d at 331; *Schlumberger*, 959 S.W.2d at 177. Courts examine the length of time that the parties dealt with each other, in part, to determine whether their dealings "continued for such a time that one party is justified in relying on the other to act in his best interest." *Am. Med. Int'l, Inc. v. Giurintano*, 821 S.W.2d 331, 339–40 (Tex. App.-Houston [14th Dist.] 1991, no writ). But even relationships of trust and confidence that are of long duration are not necessarily informal fiduciary relationships. *See Crim Truck*, 823 S.W.2d at 595 (concluding that 42–year relationship was not sufficient in itself to create informal fiduciary relationship).

Kelly did not demonstrate that he had a special relationship of trust and confidence that existed "prior to, and apart from, the agreement made the basis of the suit." *Meyer*, 167 S.W.3d at 331. The parties did not have any kind of relationship, professional or personal, prior to Kelly's employment with Gregan's law firm. Kelly contends that his employment agreement with Gregan first as an associate and later as a non-equity partner establishes a fiduciary relationship between the parties.[3] Even if we ignored the parties' contract and distin-

---

3. As we have held above, for the purposes of this appeal, there was no subsequent partnership agreement between the parties. The contract explicitly stated it covered all of Kelly's employment with Gregan: both his time as an associate and his time as a non-equity partner.

guished between the time Kelly was an associate and the time he was a non-equity partner, Kelly presents no evidence that there was any action taken in his relatively brief time as an associate that would show a fiduciary relationship was created. Accordingly, no fiduciary relationship could have existed before and separate from the agreement made the basis of this suit. *See Meyer,* 167 S.W.3d at 331; *Schlumberger,* 959 S.W.2d at 177.

On appeal, Kelly concedes that Gregan could have fired him but argues that it was the manner in which she fired him that breached the fiduciary duty he claims to exist.

The jury found, in answer to one of the jury questions, that the parties' relationship was an at-will relationship. Traditionally, both employer-employee relationships and partners in a partnership are at-will relationships. *See Midland Judicial Dist. Cmty. Supervision & Corr. Dep't v. Jones,* 92 S.W.3d 486, 487 (Tex. 2002) (holding employment in Texas is at-will); *Bohatch v. Butler & Binion,* 977 S.W.2d 543, 545–46 (Tex.1998) (*"Bohatch II"*) (holding that partnerships are at-will and partners have no obligation to remain partners). An at-will relationship can be terminated " 'for good cause, bad cause, or no cause at all.' " *Midland Judicial Dist.,* 92 S.W.3d at 487 (quoting *Montgomery Cnty. Hosp. Dist. v. Brown,* 965 S.W.2d 501, 502 (Tex.1998)). It can also be terminated at any time. *Fed. Express Corp. v. Dutschmann,* 846 S.W.2d 282, 283 (Tex. 1993). While other fiduciary duties exist among partners, there is no fiduciary duty owed in the decision to expel a partner. *Bohatch II,* 977 S.W.2d at 546–47 (holding fiduciary duty partners owe one another does not encompass duty to remain partners).

A formal fiduciary relationship such as one between partners does not affect the at-will nature of the partnership, and standard employment relationships are at-will. There is no reason, then, to treat informal fiduciary relationships differently absent evidence showing not just that a fiduciary relationship existed in general, but that the fiduciary relationship necessarily modified the at-will nature of the standard employment · relationship. There is no such evidence in the record.

Kelly also argues that the opinion from the Fourteenth Court of Appeals that preceded *Bohatch II* establishes that there is a fiduciary duty not to expel fellow partners in a partnership in bad faith and, by extension, a similar duty can exist in an informal fiduciary relationship. *See Bohatch v. Butler & Binion,* 905 S.W.2d 597, 602 (Tex.App.-Houston [14th Dist.] 1995), *aff'd,* 977 S.W.2d 543, 545 (Tex.1998) (*"Bohatch I"*). Kelly argues that, because the Texas Supreme Court affirmed the judgment of the Fourteenth Court of Appeals, this holding still stands. We disagree.

In *Bohatch I,* the court held that a fiduciary duty existed not to expel fellow partners in a partnership in bad faith but also held there was legally insufficient evidence in the record to show that the duty had been breached. *Id.* at 602, 604; *see also Bohatch II,* 977 S.W.2d at 545 (summarizing holdings in *Bohatch I* ). In *Bohatch II,* in contrast, the Texas Supreme Court held that partners in a partnership are at-will relationships and, accordingly, there is no duty to remain partners. 977 S.W.2d at 545, 546. It went on to analyze whether there was a narrow good-faith whistle-blower exception to this at-will relationship and held that there was not. *Id.* at 546–47.

An at-will relationship and a relationship protected by a duty not to terminate the relationship in bad faith are antithetical. The very idea of at-will relationships is

that they can be terminated " 'for good cause, bad cause, or no cause at all.' " *Midland Judicial Dist.*, 92 S.W.3d at 487 (quoting *Montgomery Cnty. Hosp. Dist.*, 965 S.W.2d at 502). It follows, then, that the Texas Supreme Court's holding in *Bohatch II* that partners in a partnership are at-will relationships necessarily overruled the holding in *Bohatch I* declaring a fiduciary duty existed not to fire fellow partners in a partnership in bad faith. The Texas Supreme Court affirmed the judgment of the Fourteenth Court of Appeals because the two opinions reached the same result—overturning the jury's determination that there had been a breach of a fiduciary duty in the termination of Bohatch—not because all the holdings in the two opinions were consistent.

Both employer-employee relationships and partners in a partnership are at-will relationships. Kelly bore the burden of establishing that an informal fiduciary duty necessarily modified the at-will status of his employment. Kelly only presented evidence that the parties subjectively believed that fiduciary duties existed in general. Additionally, there was no evidence of a fiduciary relationship in a business transaction between two lawyers where nothing in their contract suggested such a relationship, their relationship as lawyers practicing in a firm did not suggest such a relationship, and there was no evidence that Kelly justifiably relied on Gregan to put his interests above those of the law firm. We hold that Kelly failed to carry his burden as a matter of law to show that Gregan had a fiduciary duty to Kelly that limited the manner in which she could terminate Kelly's employment.

We sustain Gregan's second point of error.[4]

4. Because this holding is dispositive of this appeal, we do not reach Gregan's remaining points of error.

## Conclusion

We reverse the judgment of the trial court and render a take-nothing verdict in favor of Jacquelyn C. Gregan.