

# IN THE
# TENTH COURT OF APPEALS

### No. 10-14-00344-CV

**CARMEN GARRETT,**

**Appellant**

**v.**

**FIRST STATE BANK CENTRAL TEXAS,**

**Appellee**

**From the 220th District Court
Hamilton County, Texas
Trial Court No. CV03913**

## MEMORANDUM OPINION

This case began when Appellee First State Bank Central Texas (First State) filed an interpleader action naming as defendants Appellant Carmen Garrett and Joy Alexander, the Independent Executor of the Estate of John E. Alexander, II, Deceased.[1] The interpleader involved the contested ownership of approximately $362,000 in a money-market account at First State. The account had originally been opened by John but Garrett

---

[1] Joy is John's ex-wife.

was later added as a signatory to it. After John's death, his estate and Garrett each claimed the funds, and Garrett filed a counterclaim against First State asserting claims of breach of fiduciary duty and constructive fraud.

Granting the Estate's summary-judgment motion, the trial court declared that the account was not a joint account with right of survivorship, and the summary judgment was severed. Garrett's counterclaim proceeded to a jury trial, and the jury found that First State and Garrett did not have a fiduciary relationship. The trial court entered a take-nothing judgment and denied Garrett's motion for new trial. Raising three issues, Garrett appeals. We will affirm.

Briefly, the trial evidence showed that on September 18, 2012, at John's request, Beverly Rohde, First State's account representative, added Garrett as a signatory to John's money-market account and Garrett signed the existing signature card. Garrett was John's caregiver and lived with him while he fought cancer and other illnesses. It is undisputed that John told Rohde that he wanted to add Garrett to the account so she could write checks to pay his bills, even after he had died. Garrett had not otherwise been a First State customer.

Specifically, Rohde asked Garrett to accompany Rohde into the Bank where Rohde prepared a document for Garrett to sign. The document was prepared by Rohde in Rohde's office, and Garrett signed the document in Rohde's office on the blank where Rohde told Garrett to sign, without Garrett's having read it. Rohde used a copy of a signature card that John had already signed to prepare the signature card that Garrett signed. John did not sign the document that day or on any future date, and John never

saw the document that Rohde prepared.

Garrett's trial testimony diverged from Rohde's testimony in one key particular—Garrett said at trial that John had specifically identified a multi-party account with right of survivorship as the type of account he wanted. Rohde, on the other hand, testified unequivocally that John never told her that he wanted Garrett to receive the money after he died or that he wanted Garrett to be a beneficiary of the account.

In any event, when John and Garrett left the bank on September 18, the account signature card retained its original designation as a single-party account. A short time later, Rohde realized that an account designated as a single-party account would not accomplish John's stated purpose, so she set it up as if it were a multi-party account with right of survivorship, and she changed the account designation in the bank's system to allow Garrett to pay John's bills even after he had died. Specifically, Rohde testified that she altered the card by using white-out to delete the X on the Single Party Account Without Right of Survivorship blank, and she then placed an X on the Multiple-Party Account With Right of Survivorship blank. John never saw the card after it had been altered by Rohde, and Rohde never told John that she had altered the signature card for the account.

After September 18, Garrett began signing checks on the account and continued to do so after John's death on December 7, 2012. After John's death, Rohde asked Garrett for John's death certificate so she could put the account in Garrett's name. Garrett complied and the account was changed. Garrett eventually added her two sisters on the account as joint owners with right of survivorship. After Joy qualified as the Independent

Executor of John's estate, she learned about the account and that John had not signed the signature card when Garrett had signed it. Because of the contest over the funds, the bank filed the interpleader.

In her first issue, Garrett asserts that the trial court erred in overruling her objection to Question 1 in the charge, which is the following:

QUESTION 1

On September 18, 2012, did a relationship of trust and confidence exist between First State Bank Central Texas and Carmen Garrett?

A relationship of trust and confidence existed if Carmen Garrett justifiably placed trust and confidence in First State Bank Central Texas to act in Carmen Garrett's best interest.

A person is justified in placing confidence in the belief that another party will act in his or her best interest only where she is accustomed to being guided by the judgment or advice of the other party, *and there exists a long association in a business relationship, as well as personal friendship*. [Emphasis added].

Subjective trust and feelings alone do not justify transforming arm's-length dealings into a relationship of trust and confidence.

Answer "Yes" or "No"

Answer: *No*

Garrett, who had the burden of proof on this issue, objected to the inclusion of the emphasized wording on the ground that "it is not required to be included in the charge or under the evidence of this case." First State contends that Garrett did not preserve her complaint for appellate review.[2] We assume without deciding that she did.

---

[2] The record is clear that Garrett's position was that John's long association with First State—rather than Garrett's, who had no prior association with the bank—should be the focus of the alleged fiduciary relationship, as evidenced by her request to engraft John into Question 1. Garrett thus arguably preserved

We review charge error for abuse of discretion. *Moore v. Stone,* 255 S.W.3d 284, 289

(Tex. App.—Waco 2008, pet. denied).

> An informal relationship may give rise to a fiduciary duty where one person trusts in and relies on another, whether the relation is a moral, social, domestic, or purely a personal one. *See Schlumberger Technology Corp. v. Swanson,* 959 S.W.2d 171 (Tex. 1997); *Thigpen v. Locke,* 363 S.W.2d 247, 253 (Tex. 1962). But not every relationship involving a high degree of trust and confidence rises to the stature of a fiduciary relationship. *See Schlumberger,* 959 S.W.2d at 171; *Crim Truck & Tractor Co. v. Navistar Int'l Transp. Corp.,* 823 S.W.2d 591, 594 (Tex. 1992). Outside the cases in which formal fiduciary duties arise as a matter of law, confidential relationships may arise when one party has dealt with another in a certain manner for a long period of time such that one party is justified in expecting the other to act in its best interest. *Insurance Co. of North America v. Morris,* 981 S.W.2d 667, 674 (Tex. 1998). However, in order to give full force to contracts, we do not create such a relationship lightly. *See Thigpen,* 363 S.W.2d at 253. Thus, while a fiduciary or confidential relationship may arise from the circumstances of a particular case, to impose such a relationship in a business transaction, the relationship must exist prior to, and apart from, the agreement made the basis of the suit. *See Transport Ins. Co. v. Faircloth,* 898 S.W.2d 269, 280 (Tex. 1995).

> ….

> "However, mere subjective trust does not transform arm's-length dealing into a fiduciary relationship." *See Schlumberger Technology Corp. v. Swanson,* 959 S.W.2d 171, 177 (Tex. 1997); *Crim Truck,* 823 S.W.2d at 595.

*Burleson State Bank v. Plunkett,* 27 S.W.3d 605, 611 (Tex. App.—Waco 2000, pet. denied);

*see also Gregan v. Kelly,* 355 S.W.3d 223, 228 (Tex. App.—Houston [1st Dist.] 2011, no pet.)

("'A person is justified in placing confidence in the belief that another party will act in his

or her best interest only where he or she is accustomed to being guided by the judgment

or advice of the other party, *and there exists a long association in a business relationship, as*

---

her complaint. *See Wackenhut Corp. v. Gutierrez,* 453 S.W.3d 917, 920 (Tex. 2015). But given our disposition, we need not decide the preservation issue.

*well as personal friendship.'"*) (emphasis added) (quoting *Hoggett v. Brown,* 971 S.W.2d 472, 488 (Tex. App.—Houston [14th Dist.] 1997, pet. denied)).

The wording in Question 1 that Garrett complains of—"*and there exists a long association in a business relationship, as well as personal friendship*"—is a correct statement of the law.  *See Gregan,* 355 S.W.3d at 228.  We disagree with Garrett's argument that this wording contradicts *Texas Bank & Trust Co. v. Moore,* 595 S.W.2d 502 (Tex. 1980).  In *Moore,* the supreme court quoted the following from a 1924 Illinois opinion:

> A fiduciary relation is not limited to cases of trustee and cestui que trust, guardian and ward, attorney and client, nor other recognized legal relations, but it exists in all cases in which influence has been acquired and abused, in which confidence has been reposed and betrayed, and the origin of the confidence is immaterial, and may be moral, social, or domestic, or merely personal.

*Id.* at 507 (quoting *Higgins v. Chicago Title & Trust Co.,* 312 Ill. 11, 18, 143 N.E. 482, 484 (1924)).  This quotation is an unremarkable recognition of informal fiduciary relationships in Texas law.  *See id.* ("the term includes those informal relations which exist whenever one party trusts and relies upon another, as well as technical fiduciary relations").  *Moore* further recognized that "the problem of the existence or not of a fiduciary relationship … is one of equity and the circumstances out of which a fiduciary relationship will be said to arise are not subject to hard and fast lines."  *Id.* at 508.

The existence of an informal fiduciary relationship depends on the circumstances of each case.  *Thigpen,* 363 S.W.2d at 253; *Burleson State Bank,* 27 S.W.3d at 611; *see also Lundy v. Masson,* 260 S.W.3d 482, 501 (Tex. App.—Houston [14th Dist.] 2008, pet. denied).  But those circumstances must include a relationship that existed before and apart from

the agreement made the basis of the suit, *Burleson State Bank,* 27 S.W.3d at 611, and "a long association in a business relationship, as well as personal friendship." *Gregan,* 355 S.W.3d at 228 (quoting *Hoggett,* 971 S.W.2d at 488); *see Dominguez v. Brackey Enters., Inc.,* 756 S.W.2d 788, 791 (Tex. App.—El Paso 1988, writ denied); *Kalb v. Norsworthy,* 428 S.W.2d 701, 705 (Tex. Civ. App.—Houston [1st Dist.] 1968, no writ). Therefore, the trial court did not abuse its discretion by including this wording in Question 1's instructions.

Garrett also complains in her first issue that the trial court erred, over her objection, by conditionally submitting Questions 2 (when relationship arose), 3 (breach), 4 (breach was constructive fraud), and 5 (damages) upon affirmative answers to the previous questions. "[I]n the event of a proper conditional submission of issues to the jury, there is no right to insist upon an unconditional submission." *Johnson v. Whitehurst,* 652 S.W.2d 441, 447 (Tex. App.—Houston [1st Dist.] 1983, writ ref'd n.r.e.). Garrett makes no argument that these questions were improperly submitted conditionally. The trial court did not abuse its discretion. We overrule issue one.

Garrett's second issue contends that the evidence is factually insufficient to support the jury's "Yes" answer to Question 6, which asked:

QUESTION 6

Did John Alexander express to Beverly Rohde a desire to add Carmen Garrett as an authorized signatory on FSB Account #0947 for the sole purpose of permitting Carmen Garrett to pay John Alexander's bills in the event of his sickness or upon his death?

Answer "Yes" or "No"[3]

---

[3] Question 6 was submitted as the fact issue underlying First State's request for declaratory judgment and a resulting award of attorney's fees under the Declaratory Judgments Act. The trial court, however,

When the party without the burden of proof at trial complains of the factual sufficiency of the evidence to support an adverse finding, we must consider and weigh all of the evidence, not just the evidence that supports the verdict. *Maritime Overseas Corp. v. Ellis,* 971 S.W.2d 402, 406-07 (Tex. 1998); *Checker Bag Co. v. Washington*, 27 S.W.3d 625, 633 (Tex. App.—Waco 2000, pet. denied). We will set aside the finding only if it is so contrary to the overwhelming weight of the evidence that the finding is clearly wrong and unjust. *Ellis,* 971 S.W.2d at 407. Reversal can occur because the finding was based on weak or insufficient evidence or because the proponent's proof, although adequate if taken alone, is overwhelmed by the opponent's contrary proof. *Checker Bag*, 27 S.W.3d at 633.

Garrett said at trial that John had specifically identified a multi-party account with right of survivorship as the type of account he wanted. Rohde, on the other hand, testified that John never told him that he wanted Garrett to receive the money after he died. She testified that John "said he wanted to get Carmen [Garrett] added onto his signature card." Rohde further testified that John said, "I want to put Carmen on my signature card … I want her to be able to take care of things, even after I'm gone."

Furthermore, in explaining why, after Garrett signed the signature card, Rohde whited out the check mark indicating that the account was a Single-Party Account Without "P.O.D." and checked a box indicating that the account was a Multiple-Party

declined to award attorney's fees to First State and First State has not appealed that ruling, so Garrett cannot establish harm. Nevertheless, we will discuss the factual sufficiency of the evidence.

Account With Right of Survivorship, Rhode said:

> A. I was trying to set up the account *as though it was* a multiparty account so as to allow Ms. Garrett to write checks, even after Mr. Alexander's death. [Emphasis added.]

Rohde later testified similarly:

> A. I was trying to set up the account *as if it were* a multiparty account with right of survivorship in order to accomplish the wishes Mr. Alexander had made to me. [Emphasis added.]
>
> Q. What was that wish?
>
> A. That was to allow Ms. Garrett to continue to write checks on the account, even after he had passed.

On cross-examination, Rohde likewise testified:

> A. I was trying to set up the account *as if it were* a multi-party account with right of survivorship. That's the only way that would allow Carmen to continue to write checks. [Emphasis added.]
>
> When asked if she changed the signature card to make Garrett an owner of the

account, Rohde responded:

> A. No, sir. I did this to accommodate the wishes of my customer.

And when asked if the only way the account could be set up as a multiparty account with

right of survivorship was if Garrett was a joint owner of the account, Rohde responded:

> A. I set it up as if she were [a joint owner of the account] to accommodate the wishes of Mr. Alexander to allow her to still continue to write these checks, even after he was gone.
>
> ….
>
> A. He never told me he wanted her to be a beneficiary.
>
> ….

Q. Well, as a result of what you did, was Ms. Garrett allowed to pay his bills?

A. Yes, sir.

Q. Even after he died?

A. I believe so.

We conclude that the evidence is factually sufficient to support the jury's affirmative finding on Question 6. Issue two is overruled.

In her third issue, Garrett asserts that First State failed to disclose in discovery that it had insurance coverage for Garrett's cause of action and that the nondisclosure harmed Garrett. To preserve a discovery complaint for appellate review, Garrett must have raised the discovery matter in the trial court and sought relief. *See* TEX. R. CIV. P. 215.1; TEX. R. APP. P. 33.1(a); *In re Marriage of Price,* No. 10-14-00260-CV, 2015 WL 6119457, at *1 (Tex. App.—Waco Oct. 15, 2015, no pet. h.). Because Garrett did not do so, her issue is overruled.

Having overruled all of Garrett's issues, we affirm the trial court's judgment.

REX D. DAVIS
Justice

Before Chief Justice Gray,
  Justice Davis, and
  Justice Scoggins
Affirmed
Opinion delivered and filed May 5, 2016
[CV06]

