

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

————————————————

No. 02-24-00507-CV

————————————————

DARRELL WAYNE HENRY, Appellant

V.

SENTER LEE HENRY, III, AS DEPENDENT ADMINISTRATOR OF THE
ESTATE OF MOZELLE HENRY, DECEASED, Appellee

———————————————————————————————————————————

On Appeal from the 97th District Court
Montague County, Texas
Trial Court No. 2021-0180M-CV

———————————————————————————————————————————

Before Sudderth, C.J.; Kerr and Walker, JJ.
Memorandum Opinion by Justice Walker

## MEMORANDUM OPINION

## I. INTRODUCTION

Following his mother's death, Appellant Darrell Wayne Henry recorded a deed—ten years after its alleged execution—that he claimed his mother, Mozelle Henry, had delivered to him a few months before her passing.[1]

The deed purported to convey the entirety of Mozelle's 912-acre ranch solely to him and divest his siblings of their anticipated inheritance to the ranch under her will. Darrell's siblings learned that Darrell had recorded the deed after Mozelle's death when they sought to pay the taxes on the ranch and probate her will. After recording the deed, Darrell sold 70 acres of the ranch to an unrelated third party and received $257,151 in profit. The oldest sibling, Appellee Senter Lee Henry III, as dependent administrator of the estate of Mozelle Henry, sued Darrell for (1) removal of cloud on title and (2) breach of fiduciary duty to Mozelle.

Following a bench trial, the trial court found that the deed had not been delivered to Darrell, that Mozelle had lacked the legal capacity or physical ability to deliver the deed,[2] and that the deed was fraudulent. Consequently, the trial court

---

[1]The appellant and appellee are brothers who share a common surname. To avoid confusion, we will refer to them by their given names.

[2]Section 5.021 of the Texas Property Code requires conveyances of land to be in writing and delivered by the conveyor or by the conveyor's agent authorized in writing. Tex. Prop. Code Ann. § 5.201. "Two elements must be established to prove delivery of a deed: (1) the deed must be delivered into the control of the grantee, and (2) the grantor must intend the deed to become operative as a conveyance." *Maayeh v.*

concluded that the deed was null and void and that it constituted cloud on title and should be removed. The trial court further found that Darrell had owed a fiduciary duty to Mozelle and that he had breached that duty to her. Finally, the trial court ordered Darrell to pay $257,151 for disgorgement of profit and $514,302 in exemplary damages.

Darrell raises thirteen issues[3] and makes a myriad of complaints regarding the sufficiency of the evidence and the trial court's findings of fact and conclusions of law. We will affirm in part and reverse in part.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Mozelle died on November 6, 2019. At the time of her death, she was unmarried and had four children: Senter, John Mark Henry, Darrell, and Laura Lea Hefley.[4]

Mozelle owned a ranch (the Ranch) composed of several tracts that totaled 912 acres. In December 2009, Mozelle conveyed an undivided one-half interest in a

---

*Curry*, No. 05-19-01466-CV, 2022 WL 1089913, at *3 (Tex. App.—Dallas Apr. 12, 2022, no pet.) (citing *Binford v. Snyder*, 189 S.W.2d 471, 475 (Tex. 1945).

[3]Darrell's brief enumerates fourteen issues, but his thirteenth issue is a verbatim repetition of his twelfth issue.

[4]Mozelle married Senter Lee Henry Jr. who died in 1990, and she never remarried.

2.25-acre tract—not part of the Ranch—to Darrell. An attorney, Greg Underwood, prepared the deed. Then, in April 2010, Underwood prepared two more deeds.[5]

The first deed conveyed the remaining one-half interest to the 2.25-acre tract to Darrell. The second deed (Disputed Deed) conveyed the entirety of the Ranch to Darrell. Darrell promptly recorded the two deeds to the 2.25-acre tract after their executions, but he did not record the Disputed Deed to the Ranch.

In the later years of her life, Mozelle suffered from numerous health problems that resulted in several hospitalizations. In the spring of 2019, she briefly moved into a rehabilitation facility after a hospital stay but left against medical advice after only a few weeks. Mozelle—then ninety-one-years-old—required the assistance of caretakers when she returned home. She frequently stayed in her home and required medical assistance to walk and perform household activities. Throughout 2019, Darrell helped manage the Ranch and negotiated pipeline easements on Mozelle's behalf.

In April 2019, while driving by Mozelle's home, Darrell claimed that he saw Mozelle sitting outside on her electric scooter. Darrell claimed that he stopped his vehicle and that Mozelle drove her scooter into her home, returned with a manilla envelope containing the Disputed Deed, and handed it to him. His siblings later disputed whether Mozelle was physically capable of doing this.

---

[5]Darrell said that he paid Underwood "250 dollars and a bottle of Jameson whiskey" to prepare the deeds. Underwood died in 2019 before Mozelle.

4

On November 6, 2019, Mozelle died, leaving behind a will dated February 2, 2016 (Will). The Will devised all her property to her children in equal shares and named Senter as the executor of her estate. A month after her death, Darrell recorded the Disputed Deed. The Disputed Deed contained a front page—which Mozelle had signed—and two pages describing the seven tracts that constituted the Ranch. The two pages that described the Ranch were labeled as Exhibit A. Meanwhile, there was no evidence that Mozelle had ever amended or revoked her 2016 Will, and on September 23, 2020, the 2016 Will was admitted to probate.

Darrell did not tell his siblings that he had recorded the Disputed Deed. Instead, they learned of Darrell's actions after Mozelle's death when Laura went to the county tax office to pay the property taxes on the Ranch and was told that Mozelle had deeded the property to Darrell. In 2021, Darrell sold 70.16 acres of the Ranch to unrelated third persons and collected $257,151 in net proceeds. Senter, as dependent administrator of Mozelle's estate, sued Darrell, seeking to remove the cloud on the Ranch's title and for breaching his fiduciary duty to Mozelle.

The case proceeded to trial. Laura and a doctor who specializes in geriatric psychiatry presented testimony on Mozelle's lack of capacity to convey and deliver the Disputed Deed to Darrell. A forensic document and handwriting examiner provided testimony on the likelihood of alteration of the Disputed Deed.[6] The document

---

[6]The document examiner's testimony was admitted through a videotaped deposition.

examiner compared the Disputed Deed's first page and the two deeds to the 2.25-acre tract against Exhibit A, and she explained that, in her opinion, Exhibit A was not originally included with the first page of the Disputed Deed. Her opinion was based on several considerations, including Exhibit A's spacing, font, style, paragraphing, and lack of pen indentations.

The trial court found that Exhibit A had not been attached to the Disputed Deed on the date that it was executed and that the Disputed Deed was not valid, was fraudulent, and should be set aside. The trial court further found that the forensic document examiner's testimony was credible but that Darrell's testimony was not credible or consistent with the evidence presented at trial.

The trial court also found that Mozelle had lacked capacity in 2019 to deliver the Disputed Deed to Darrell, that she never intended to convey the Ranch, and that she did not physically deliver the Disputed Deed to him. The trial court further found that Mozelle had a relationship of trust and confidence with Darrell, which relationship was based on and related to her ownership of the Ranch. The trial court concluded that Darrell had defrauded Mozelle by deceiving her of his intentions with the Ranch and by selling seventy acres of the Ranch and retaining the proceeds. The trial court ordered Darrell to pay $257,151 to Mozelle's estate as disgorgement of

profit from his sale of the seventy acres and granted Senter $514,302 in exemplary damages.[7]  Darrell brought this appeal.

## III. DISCUSSION

Although Darrell raises thirteen issues, his complaints can be effectively consolidated into two groups:  (1) the Disputed Deed being cloud on title and (2) the breach of fiduciary duty.  Both groups of challenges center on the sufficiency of the evidence.  There is legally and factually sufficient evidence to support the trial court's finding that the Disputed Deed was fraudulent and thereby null and void.  However, there is legally insufficient evidence to support the trial court's finding that Darrell owed Mozelle a fiduciary duty.

### A. THE DISPUTED DEED

### 1. Standard of Review and Applicable Law

"A trial court's findings of fact issued after a bench trial have the same weight, and are judged by the same appellate standards, as a jury verdict."  *Tex. Outfitters Ltd., LLC v. Nicholson*, 572 S.W.3d 647, 653 (Tex. 2019).  Accordingly, when reviewing the legal or factual sufficiency of the evidence to support a trial court's findings of fact, we apply the same standards used to review jury findings.  *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994); *Okon v. Levy*, 612 S.W.2d 938, 941 (Tex. App.—

---

[7]The trial court's conclusions of law describe the award of $257,151 to Senter as actual damages, but the trial court's final judgment describes the award as a disgorgement of profit.

Dallas 1981, writ ref'd n.r.e.) (citing *Hall v. Villarreal Dev. Corp.*, 522 S.W.2d 195, 195–96 (Tex. 1975)).

We may sustain a legal-sufficiency challenge—that is, a no-evidence challenge—only when (1) the record bears no evidence of a vital fact, (2) the rules of law or of evidence bar the court from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence establishes conclusively the opposite of a vital fact. *Gunn v. McCoy*, 554 S.W.3d 645, 658 (Tex. 2018). In determining whether legally sufficient evidence supports the challenged finding, we must consider evidence favorable to the finding if a reasonable factfinder could, and we must disregard contrary evidence unless a reasonable factfinder could not. *Cent. Ready Mix Concrete Co. v. Islas*, 228 S.W.3d 649, 651 (Tex. 2007); *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). We indulge "every reasonable inference deducible from the evidence" in support of the challenged finding. *Gunn*, 554 S.W.3d at 658 (quoting *Bustamante v. Ponte*, 529 S.W.3d 447, 456 (Tex. 2017)).

Anything more than a scintilla of evidence is legally sufficient to support a finding. *Marathon Corp. v. Pitzner*, 106 S.W.3d 724, 727–28 (Tex. 2003). More than a scintilla exists if the evidence rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. *Gunn*, 554 S.W.3d at 658. On the other hand, no more than a scintilla exists when the evidence offered to prove a vital fact is so weak that it creates no more than a mere surmise or suspicion of its existence.

8

*McAllen Hosps., L.P. v. Lopez*, 576 S.W.3d 389, 397 (Tex. 2019); *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983).

When reviewing an assertion that the evidence is factually insufficient to support a finding, we set aside the finding only if, after considering and weighing all the pertinent record evidence, we determine that the credible evidence supporting the finding is so weak, or so contrary to the overwhelming weight of all the evidence, that the finding should be set aside and a new trial ordered. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986) (op. on reh'g); *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986); *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965). When, as here, the party without the burden of proof on a fact issue complains of an adverse fact finding, that party must show that "insufficient evidence" supports the finding; that is, that the credible evidence supporting the finding is too weak or that the finding is against the great weight and preponderance of contrary credible evidence. *See Gooch v. Am. Sling Co.*, 902 S.W.2d 181, 184 (Tex. App.—Fort Worth 1995, no writ).

In performing evidentiary-sufficiency reviews, we must be mindful that the fact-finder is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 696–97 (Tex. 1986); *Nwokedi v. Unlimited Restoration Specialists, Inc.*, 428 S.W.3d 191, 199, 205 (Tex. App.—Houston [1st Dist.] 2014, pet. denied). The fact-finder is responsible for resolving conflicts in the evidence, and it may believe one witness and disbelieve another. *McGalliard*, 722 S.W.2d at 697. We may not reweigh the evidence and set aside a

finding merely because we are of the opinion that a different result is more reasonable. *Pool*, 715 S.W.2d at 634.

We review de novo a trial court's conclusions of law. *See Compass Bank v. Goodman*, 416 S.W.3d 715, 718–19 (Tex. App.—Dallas 2013, pet. denied). Although we are not bound by the trial court's legal conclusions, we will uphold conclusions of law on appeal if the judgment can be sustained on any legal theory supported by the evidence. *Sheetz v. Slaughter*, 503 S.W.3d 495, 502 (Tex. App.—Dallas 2016, no pet.). Thus, incorrect conclusions of law do not require reversal if the controlling findings of fact support a correct legal theory. *Id.*

### 2. Sufficient Evidence that the Disputed Deed is Fraudulent

In his first through fourth issues, Darrell challenges the legal and factual sufficiency of the trial court's findings that (1) the deed was not physically or legally delivered, (2) the deed was fraudulent, (3) Mozelle lacked capacity to deliver the deed, and (4) the deed was null and void. Because the evidence is legally and factually sufficient to support the trial court's finding that the Disputed Deed is fraudulent, and because this issue is dispositive of this first group of challenges, we focus our discussion on that issue.

A forged deed is void as a matter of law and passes no title. *Morris v. Wells Fargo Bank, N.A.*, 334 S.W.3d 838, 843 (Tex. App.—Dallas 2011, no pet.); *Bellaire Kirkpatrick Joint Venture v. Loots*, 826 S.W.2d 205, 209 (Tex. App.—Fort Worth 1992, writ denied). The term "forge" means: "to alter, make, complete, execute, or

10

authenticate any writing so that it purports: (i) to be the act of another who did not authorize that act; (ii) to have been executed at a time or place or in a numbered sequence other than was in fact the case; or (iii) to be a copy of an original when no such original existed." Tex. Penal Code Ann. § 32.21(a)(1)(A); *see Solano v. Landamerica Com. Title of Fort Worth, Inc.*, No. 02-07-152-CV, 2008 WL 5115294, at *4 (Tex. App.—Fort Worth Dec. 4, 2008, no pet.) (mem. op.) (applying definition in civil proceeding); *In re Estate of Flores*, 76 S.W.3d 624, 630 (Tex. App.—Corpus Christi–Edinburg 2002, no pet.) (same).

The trial court was presented with considerable evidence related to the alleged forgery of the Disputed Deed. A forensic document and handwriting examiner testified that it was her professional opinion that Exhibit A—pages two and three of the Disputed Deed—was "probably more likely not attached" to the first page of the Disputed Deed—the page bearing Mozelle's signature—because of anomalies that showed it was not reliable or an intact document. The forensic document examiner explained that the first page of the Disputed Deed was a heavier quality paper with a watermark while Exhibit A was copy paper without a watermark. The first page was printed from a laser printer while Exhibit A "w[as] photocopies and many generations away from the first generation." There was also font differences, spacing abnormalities, and typographical variances between the Disputed Deed's first page and Exhibit A. The document examiner further explained that the Disputed Deed's first page had a footer that was absent in Exhibit A.

The document examiner opined that the two deeds to the 2.25-acre tract—unrelated to the Ranch—likewise supported her conclusion that the Disputed Deed did not include Exhibit A when Mozelle signed it. All three deeds were allegedly prepared by the same attorney, and the first page of all three deeds had the same font. But, unlike Exhibit A in the Disputed Deed, each subsequent page of the two 2.25-acre tract deeds had the same font, spacing, paper quality, footers, and paragraphing. Additionally, Exhibit A did not describe or refer to the instrument to which it was an exhibit, but by contrast, the two 2.25-acre tract deeds contained such a description. Moreover, there was no pen indentations on Exhibit A from Mozelle's signature on the first page of the Disputed Deed.

The forensic document examiner testified that she believed Exhibit A "was created at a different time and in a different manner than the first page of the [D]isputed [D]eed." She explained that there was "a lot of red flags" and that there was overwhelming evidence that Exhibit A was "not following the same credible, intact document."

The trial court found that the Disputed Deed was fraudulent. Because the trial court determined that the Disputed Deed was fraudulent, it found that the Disputed Deed was null and void and that it constituted a cloud on title. *See Dyson Descendant Corp. v. Sonat Expl. Co.*, 861 S.W.2d 942, 947 (Tex. App.—Houston [1st Dist.] 1993, no writ); *see also Commonwealth Land Title Ins. Co. v. Nelson*, 889 S.W.2d 312, 318 (Tex. App.—Houston [14th Dist.] 1994, writ denied) ("[W]hen a document is void or void

12

ab initio it is as if it did not exist because it has no effect from the outset."); *Nobles v. Marcus*, 533 S.W.2d 923, 925–26 (Tex. 1976).

Indulging "every reasonable inference deducible from the evidence" in support of the challenged finding, we conclude that there is legally sufficient evidence to support the trial court's finding that Exhibit A was fraudulent. *Gunn*, 554 S.W.3d at 658. Here, the evidence rises to a level that would enable reasonable and fair-minded people to differ in their conclusions on whether the Disputed Deed was fraudulent. *See id.* The trial court was the judge of the credibility of the witnesses and the weight to be given their testimony. *McGalliard*, 722 S.W.2d at 696–97 (Tex. 1986); *see In re Estate of Flores*, 76 S.W.3d at 630; *Nwokedi*, 428 S.W.3d at 205. Thus, the trial court was responsible for resolving conflicts in the evidence, and it was free to believe one witness—such as the forensic document examiner—and disbelieve another. *McGalliard*, 722 S.W.2d at 697. Darrell has failed to show that insufficient evidence supports the trial court's finding. *See Gooch*, 902 S.W.2d at 184. Darrell has not demonstrated that the credible evidence supporting the finding is too weak or that the finding is against the great weight and preponderance of contrary credible evidence. *See id.* Accordingly, we hold that there is legally and factually sufficient evidence to support the trial court's finding that the Disputed Deed was fraudulent. *See Cain*, 709 S.W.2d at 176. We overrule Darrell's second issue.

13

Darrell's first, third and fourth issues are disposed by our holding that there is legally and factually sufficient evidence to support the trial court's finding that the Disputed Deed was fraudulent.

His fourth issue—the trial court's finding that the Disputed Deed is null and void—stems from the Disputed Deed being fraudulent, as a forged deed is void. *Bellaire Kirkpatrick Joint Venture*, 826 S.W.2d at 209. Here, because we have held that there is sufficient evidence to support the trial court's finding that the Disputed Deed was fraudulent, we hold that the trial court did not err by concluding that the Disputed Deed was null and void. *Id.* Accordingly, we overrule Darrell's fourth issue.

As for his first and third issues—challenges to the trial court findings that the Disputed Deed was not delivered and that Mozelle lacked capacity to deliver the deed—those issues are likewise resolved by the trial court's finding that the Disputed Deed was fraudulent. Because the Disputed Deed was fraudulent, it was void, and it matters not whether the Disputed Deed was delivered or whether Mozelle possessed the capacity to deliver it to Darrell. Accordingly, we do not reach these issues because they are not necessary to the final disposition of this appeal. *See* Tex. R. App. P. 47.1 (requiring appellate court to hand down written opinion disposing of every issue necessary to final disposition of appeal).

## B. BREACH OF FIDUCIARY DUTY

In his second group of issues—five through thirteen—Darrell challenges the breach of fiduciary duty judgment and its accompanying damages. Because there is

14

legally insufficient evidence to support the trial court's finding that Darrell owed a fiduciary duty to Mozelle, we agree that the judgment must be reversed.

### 1. Standard of Review and Applicable Law

The elements of a claim for breach of fiduciary duty are: (1) existence of a fiduciary duty; (2) breach of the duty; (3) causation; and (4) damages. *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 220 (Tex. 2017). We will reverse a judgment for breach of fiduciary duty if it is supported by legally insufficient evidence, meaning that there is no more than a mere scintilla of evidence. *Gunn*, 554 S.W.3d at 658; *see McAllen Hosps., L.P.*, 576 S.W.3d at 397 (clarifying that evidence is insufficient if it is so weak that it does no more than create a surmise or suspicion). As previously noted, when evaluating legal sufficiency, we view the evidence in a light most favorable to the judgment, indulging every reasonable inference in the judgment's favor. *See Gunn*, 554 S.W.3d at 658; *City of Keller*, 168 S.W.3d at 827.

There are two types of fiduciary relationships in Texas: (1) a formal fiduciary relationship arising as a matter of law, such as between partners or an attorney and a client; and (2) an informal or confidential fiduciary relationship arising from a moral, social, domestic, or merely personal relationship where one person trusts in and relies upon another. *Crim Truck & Tractor v. Navistar Int'l Transp. Corp.*, 823 S.W.2d 591, 594 (Tex. 1992), *superseded by statute on other grounds as recognized in Subaru of Am., Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 225–26 (Tex. 2002). Informal fiduciary

15

relationships are not created lightly. *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 177 (Tex. 1997).

Fiduciary relationships juxtapose trust and dependence on one side with dominance and influence on the other. *See Tex. Bank & Tr. Co. v. Moore*, 595 S.W.2d 502, 508 (Tex. 1980). Whether a confidential relationship exists is "determined from the actualities of the relationship between the persons involved." *Thigpen v. Locke*, 363 S.W.2d 247, 253 (Tex. 1962). "The problem is one of equity," and the circumstances giving rise to the confidential relationship "are not subject to hard and fast lines." *Tex. Bank & Tr. Co.*, 595 S.W.2d at 508.

We consider a variety of factors to determine whether an informal fiduciary relationship exists. *See Gregan v. Kelly*, 355 S.W.3d 223, 228 (Tex. App.—Houston [1st Dist.] 2011, no pet.). A confidential fiduciary relationship may exist where influence has been acquired and abused or where confidence has been reposed and betrayed. *Crim Truck & Tractor*, 823 S.W.2d at 594. A confidential relationship "exists where a special confidence is reposed in another who in equity and good conscience is bound to act in good faith and with due regard to the interest of the one reposing confidence." *Tex. Bank & Tr. Co.*, 595 S.W.2d at 507; *see also Pope v. Darcey*, 667 S.W.2d 270, 275 (Tex. App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.) ("A confidential relationship exists where one person has a special confidence in another to the extent that the parties do not deal with each other equally, either because of dominance on one side or weakness, dependence, or justifiable trust on the other.").

16

We also consider whether the person to whom the duty is allegedly owed justifiably relied on the other for support, the person's physical and mental condition, and evidence of the person's trust. *See Lee v. Hasson*, 286 S.W.3d 1, 14–16 (Tex. App.—Houston [14th Dist.] 2007, pet. denied); *Trostle v. Trostle*, 77 S.W.3d 908, 914–15 (Tex. App.—Amarillo 2002, no pet.). However, subjective trust alone is not sufficient to establish a confidential relationship. *Thigpen*, 363 S.W.2d at 253. Rather, the trust must be justifiable. *See id.*

In examining whether the plaintiff's trust is justified, we examine whether she actually relied on the other "for moral, financial, or personal support or guidance." *Trostle*, 77 S.W.3d at 915. We examine whether, because of a close or special relationship, the plaintiff was "in fact accustomed to being guided by the judgment or advice" of the other. *Gregan*, 355 S.W.3d at 228 (quoting *Thigpen*, 363 S.W.2d at 253).

Another factor is the length and depth of the parties' relationship, although a long personal relationship alone is insufficient to create a fiduciary relationship. *See Lee*, 286 S.W.3d at 15. For example, a familial relationship, while considered a factor, does not by itself establish a fiduciary relationship. *Tex. Bank & Tr. Co.*, 595 S.W.2d at 508. Fiduciary relationships may arise when the parties have dealt with each other in such a manner for a sufficient period of time that one party is justified in expecting the other to act in her best interest. *See Ins. Co. of N. Am. v. Morris*, 981 S.W.2d 667, 674 (Tex. 1998).

17

## 2. Insufficient Evidence of a Fiduciary Duty

Senter contends that Darrell owed Mozelle a fiduciary duty because an informal relationship of trust and confidence existed between them.[8] In support of this claim, he points us to the following facts that were presented at trial:

(1) Mozelle was then 91 years old.

(2) She was immobile, weak, and suffering from many serious illnesses.

(3) Darrell was one of her sons.

(4) His relationship with Mozelle had been good since 2014.

(5) In 2015, Darrell represented Mozelle in negotiations with pipeline companies that sought easements on the Ranch.

(6) In so doing, Darrell had earned Mozelle's trust and confidence.

(7) Darrell was taking care of the Ranch for Mozelle.

(8) Because of his relationship with Mozelle at that time and what he was doing on her behalf, it was reasonable for Mozelle to put her trust and confidence in him.

Although this evidence addressed Mozelle's physical and mental condition, the record is missing evidence of additional circumstances that demonstrate Darrell's relationship with Mozelle caused her to relax the care and vigilance that she would have ordinarily exercised for her own protection. *See R.R. St. & Co., Inc.*, 81 S.W.3d at 306. Moreover, Senter failed to present evidence that Mozelle's trust in Darrell was

---

[8]Senter does not assert that there was a formal fiduciary relationship between Darrell and Mozelle.

justified; that she actually relied upon Darrell for moral, financial, or personal support or guidance; or that they dealt with each other in such a manner that she expected him to act in her best interest. *See Trostle*, 77 S.W.3d at 915. Mozelle may have trusted Darrell to negotiate pipeline easements or perform work on the Ranch, but at best, that evidence merely demonstrated subjective trust. *See id.* at 914. Likewise, the fact that Darrell was one of Mozelle's children and that he had a good relationship with her does not—absent additional circumstances—give rise to a fiduciary duty. *See Tex. Bank & Tr. Co.*, 595 S.W.2d at 508. Here, the circumstantial evidence presented at trial does not demonstrate that Mozelle was "accustomed to being guided by the judgment or advice" of Darrell.[9] *See Thigpen*, 363 S.W.2d at 253.

Viewing this evidence in a light most favorable to the judgment and indulging every reasonable inference in its favor, it fails to show that an informal relationship of trust and confidence existed between Mozelle and Darrell. Again, we note that the formation of such a relationship is not created lightly. *Schlumberger Tech. Corp.*, 959 S.W.2d at 177. We conclude that Senter did not present legally sufficient evidence to show that a relationship of trust and confidence had been established between Mozelle and Darrell and that he owed her a fiduciary duty.

---

[9]Contrary to his contention that a fiduciary relationship existed between Darrell and Mozelle, in the part of Senter's brief addressing the Disputed Deed, he argues that "Laura was carrying the heavy burden of managing Mozelle's healthcare; Darrell was not. Laura was helping Mozelle with her finances; Darrell was not."

Moreover, even if we were to presume that Darrell had owed a fiduciary duty to Mozelle, there is likewise insufficient evidence of a breach. Senter asserts that Darrell breached his duty to Mozell during her lifetime because he "deceived [her] regarding his intent to claim ownership" of the Ranch.[10] However, the record is devoid of any evidence that Darrell made a material representation of fact to Mozelle—much less, that it was false, that Darrell knew it was false, or that Mozelle had relied upon it. *See Hall v. Douglas*, 380 S.W.3d 860, 870 (Tex. App.—Dallas 2012, no pet.) (discussing the elements of fraud).

---

[10]Senter also asserts that Darrell breached his fiduciary duty to Mozelle by (1) recording the Disputed Deed and (2) selling 70 acres of the Ranch. We note that both of these alleged breaches transpired well after Mozelle's death. Essentially, Senter contends that Darrell breached a duty to a deceased person.

Senter cites, however, no case finding a breach of fiduciary duty for actions occurring after the principal died and no case where an agent has a fiduciary duty in the absence of a fiduciary relationship. We are aware of no such case. Conversely, there are many cases that hold that the fiduciary relationship between individuals ends upon the death of the person to whom the fiduciary duty is owed. *See Shearer v. Shearer*, No. 06-12-00096-CV, 2013 WL 3771409, at *8 (Tex. App.—Texarkana July 16, 2013, no pet.) (mem. op.) (holding that agent owes no fiduciary duty to administrator of estate of deceased principal); *Pace v. McEwen*, 574 S.W.2d 792, 797 (Tex. Civ. App.—El Paso 1978, writ ref'd n.r.e.); *see also Malone v. Sewell*, 168 S.W.3d 243, 251 (Tex. App.—Fort Worth 2005, pet denied) (holding therapist owes no fiduciary duty to patient after their professional relationship ended); *Kilpatrick v. Kilpatrick*, No. 02-12-00206-CV, 2013 WL 3874767, at *4 (Tex. App.—Fort Worth July 25, 2013, no pet.) (mem. op.) (holding that after partnership ends, partners owe no fiduciary duties to one another except duties related to winding up partnership); *Biesel v. Furrh*, No. 05-94-01429-CV, 1995 WL 447532, at *3 (Tex. App.—Dallas 1995, no pet.) (holding that lawyer owes no fiduciary duty to executor in negotiating settlement of claims of and against deceased client).

Accordingly, we hold that the evidence is legally insufficient to support the trial court's judgment for breach of fiduciary duty because there is less than a scintilla of evidence that Darrell had owed Mozelle a fiduciary duty. Accordingly, we sustain Darrell's fifth issue. Having sustained his fifth issue, we do not reach his sixth through thirteen issues because those issues are wholly contingent upon the existence of a fiduciary duty, and we have held that there is insufficient evidence to conclude that such a duty existed. *See* Tex. R. App. P. 47.1.

## IV. CONCLUSION

Having overruled Darrell's first through fourth issues, we affirm that part of the trial court's judgment declaring the deed null and void and removing the cloud on title to the Ranch. Having sustained Darrell's fifth issue, we reverse that portion of the trial court's judgment regarding the breach of fiduciary duty—including the awards of $257,151 as disgorgement of profit and $514,302 in exemplary damages—and we render judgment that Senter take nothing on that claim.

/s/ Brian Walker

Brian Walker
Justice

Delivered: August 7, 2025

21